FRANK E. McGEORGE ET AL. v. WALTER WALKER ET AL.

*Depositions—Authority of commissioner appointed in another state —Method of testing scales.*

1. The *authority* of a commissioner appointed by a circuit court of this State to take depositions in another state comes from his

commission, and it makes no difference whether he had power to act under the laws of his own state.

2. Under our laws, the only method of *testing scales* is furnished by act of Congress establishing uniform weights and measures, with a full set of which each state is supplied, supplemented by How. Stat., chapter 34, which provides for supplying each county and township with weights and measures compared with the standards in the office of the State Treasurer, and for an annual comparison in each township of all scales, weights, and measures, and for sealing them; and it is improper to permit any comparison of scales or weights except by reference to this standard.

Error to Lapeer. (Stickney, J.) Argued January 26, 1887. Decided February 3, 1887.

Assumpsit. Defendants bring error. Reversed. The facts are stated in the opinion.

*Geer & Williams,* for appellants.

*R. L. & T. C. Taylor (J. B. Moore,* of counsel), for plaintiffs.

CAMPBELL, C. J.   Plaintiffs sued defendants, who are in the elevator business at Imlay City, in Lapeer county, in an action of assumpsit to recover damages for alleged incorrect weighing of a lot of live hogs bought by plaintiffs at the weight given by defendants, and falling short on sale.

Plaintiffs bought the hogs in the neighborhood of Imlay City, to be weighed on defendants' scales. They were weighed on the platform in the usual manner, in lots, and the weights taken down and announced on each lot. They were then shipped to Buffalo, leaving on December 1, 1883, and arriving there two days thereafter. The Buffalo weight fell short of the Imlay City weight not far from 4,000 pounds, or about 10 per cent. It was claimed that the shrinkage was usually less than this, and the jury allowed it at about 1,900 pounds, and held defendants liable for about the same amount for shortage.

The charge of the court, although in some places referring

to negligence, in others left it to the jury to find for plaintiffs if defendants weighed the hogs incorrectly. The suit was brought on a declaration which averred an absolute agreement to weigh correctly, and was not in case for negligence. No positive agreement to that effect was made out; and, if it existed, it must be inferred from the dealings of the parties. If not existing, there was a variance in proof.

No averment is made that defendants were in any public position as weighmasters, and there is no such proof. There is nothing to show that they were bound to weigh for all comers. What appears is that, having scales designed to weigh heavy articles, they did such weighing for their neighbors who desired it, for a small fee of 15 cents for each load weighed.

What they were bound to do was to use reasonable diligence to know that their scales were correct, and reasonable care to avoid mistakes in using them. That is the extent of their duty.

There is no testimony in this case in any way tending to show that they were careless in weighing, or that the weights given were not the weights shown by their scales. The whole case turned upon supposed differences between their scales and those of some of their neighbors; none of which however, furnished any standard of comparison. The verdict was based entirely on the weight found at Buffalo, and the assumption that the hogs did not shrink enough between Imlay City and Buffalo to make up the deficiency.

We think the Buffalo depositions must be regarded as legally certified.[1] They were taken by a commissioner appointed by the Lapeer circuit court, and his authority to act came from his commission. It made no difference whether he had power to act under any law of New York. He was

---

[1] The objection was to the absence of a certificate showing that the commissioner was a person authorized to administer oaths under the laws of New York.

acting under our laws, and his action, which seems to have been regular, must be held valid.

There was also testimony, which was not objected to, concerning the average shrinkage of live-weight in such a journey. This is not very satisfactory, as the circumstances must often make a difference in different shipments. But the testimony was not questioned, although greatly conflicting, and not apparently based on very reliable *data*.

But there are fatal defects in the proof concerning defendants' scales. There is no greater presumption in favor of Buffalo scales than of scales at Imlay City. Under our laws there is only one method of testing scales here. Under the Constitution of the United States, Congress is given power to establish uniform weights and measures. By an act of June, 1836, provision was made for sending to each state a full set of standards. 5 Stat. at Large, U. S. 133. Our own statutes provide for supplying each county and township with weights and measures compared with the standards in the office of the State Treasurer. They further provide for an annual comparison in each township of all scales, weights, and measures, and for sealing them. How. Stat. *c.* 34. Under our statutes, it is improper to permit any comparison of scales or weights except by reference to this standard. There is nothing in this case to show that defendants' scales are not correct by the standard, or that the scales with which they were compared were in accordance with the standard. There can be no presumption against defendants unless it can be raised out of a variance from the legal standard. The only testimony of comparison with standard weights which was given on the trial shows that their scales are absolutely accurate.

There is nothing in the case to show that the Buffalo scales weighed correctly according to the government standard. It is matter of public notoriety that frauds and errors are not unknown in the weighing of commodities; and, in order to

make out wrong-dealing by defendants, it was absolutely necessary to show the Buffalo weighing to have been correct in manner and by the standard. This the testimony fails to show.

In our opinion, the court should have directed a verdict for the defendants.

The judgment must be reversed, with costs, and a new trial granted.

The other Justices concurred.