ROBBINS B. TAYLOR ET AL. v. THE BAY CITY STREET
RAILWAY COMPANY.

*Equity practice—Parties—Street railways—Condemnation proceedings—City charter.*

1. The owners of separate lots abutting on a street may join in a bill to restrain the construction of a street railway therein without complying with a statute requiring the payment to such owners of the damages thereby sustained, which damages are not recoverable in such suit, but in the condemnation proceedings provided for by the statute.[1]
2. It is clearly within the power of the Legislature to provide that street railway corporations shall pay to owners of abutting property, in front of which they construct their roads, the damages caused by such construction.
3. A street railway company, which receives its franchise from a village whose charter does not expressly confer upon the municipality power to authorize the use of its streets for street railway purposes without compensating adjoining owners, and which power is neither necessary, essential, nor indispensable to enable the municipality to carry out the objects and pur-

[1] See *Turner v. Hart*, 71 Mich. 129 (head-note 5), as to joinder of complainants.

| 80 | 77 |
|----|----|
| 85 | 655 |
| 85 | 669 |
| 80 | 77 |
| 87 | 368 |
| 80 | 77 |
| 98 | 368 |
| 80 | 77 |
| 101 | 143 |
| 80 | 77 |
| 110 | 392 |
| 80 | 77 |
| 112 | 101 |
| 80 | 77 |
| 126 | 396 |
| 126 | 397 |
| 80 | 77 |
| s45NW | 335 |
| D154US | 494 |
| D38Led | 1075 |
| D14SC | 1142 |
| 80 | 77 |
| 144 | 10 |
| 80 | 77 |
| 148 | 91 |
| 80 | 77 |
| f156 | 378 |
| 156 | 579 |

poses for which it was created, accepts such franchise subject to the right of the Legislature to prescribe such compensation as a condition precedent to the use of such streets for the construction of *new* lines of road.

Appeal from Bay. (Cobb, J.) Argued January 17, 1890. Decided April 11, 1890.

Bill to restrain the construction of a street railway. Complainants appeal. Decree reversed, and one entered restraining the use of a portion of defendant's road until it complies with the statute requiring condemnation proceedings, etc. The facts are stated in the opinion.

*T. A. E. Weadock,* for complainants, contended for the doctrine stated in the opinion.

*Hatch & Cooley,* for defendant, contended:

1. It is competent for the Legislature to authorize the construction of a street railway, where the cars are drawn by horses and the rails are laid at the grade of the street, so that the ordinary travel is not materially interfered with, without requiring compensation to be made to the adjoining property-holders; citing *Railroad Co. v. Heisel,* 38 Mich. 66; *Railroad Co. v. Railroad Co.,* 33 Barb. 420; *Railroad Co. v. Railroad Co.,* 35 Id. 368; *People v. Kerr,* 27 N. Y. 188; *Kellinger v. Railroad Co.,* 50 Id. 206; *Story v. Railroad Co.,* 90 Id. 122; *Mahady v. Railroad Co.,* 91 Id. 148; *Elliott v. Railroad Co.,* 32 Conn. 579; *Hinchman v. Railroad Co.,* 17 N. J. Eq. 75; *Attorney General v. Railroad Co.,* 125 Mass. 515; *Hobart v. Railroad Co.,* 27 Wis. 194; *Railroad Co. v. O'Daily,* 12 Ind. 551; Cooley, Const. Lim. 552 *et seq.*; *Milburn v. Cedar Rapids,* 12 Iowa 246; *Clinton v. Railroad Co.,* 24 Id. 455; *Franz v. Railroad Co.,* 55 Id. 107; Pierce, Railroads, 180, and cases cited; 2 Dill. Mun. Corp. §§ 722–727.

2. The constitutional provision which forbids the taking of private property without compensation is inapplicable, for the reasons—

    *a*—Private property is not taken.

    *b*—No added servitude is imposed upon the street outside of and beyond the original purpose of dedication.

    The doctrine of this proposition falls within the authorities above cited. The constitutional right to such compensation does not extend to injuries where the land is not actually taken, but only indirectly or consequentially injured; citing

*Railroad Co. v. Larson*, 40 Kan. 301; *Radcliff v. Mayor*, 4 N. Y. 195; *Conklin v. Railroad Co.*, 102 Id. 107; *Railroad Co. v. Applegate*, 8 Dana, 289; *Transportation Co. v. Chicago*, 99 U. S. 635; *Railroad Co. v. Joliet*, 79 Ill. 85.

3. The train-railway act does not require payment of damages for locating a train railway upon a street; citing Comp. Laws 1857, p. 679; and said act expressly authorized the action taken by the common council of the village of Bay City in passing the ordinance of December 14, 1864, under which the defendant acquired the right to construct its road in any of the streets of the village during the life of the ordinance without making compensation to the abutting lot-owners, which right could not be impaired by subsequent legislation; citing the *Dartmouth College Case*, and cases which have collected around it.

4. If such right has ever been waived or lost, it must be by reason of the acceptance by the defendant of the ordinance of 1885, and upon the theory that, the latter ordinance having been passed under the amended charter of the city, requiring such compensation, such requirement is embodied therein. The ordinance of 1885 re-enacts, but does not repeal, that right, and the acceptance of the defendant is no broader than the ordinance, and by such acceptance the defendant did not accept a right which it then had.

GRANT, J. The defendant was organized February 21, 1865, under an act of the Legislature providing for the organization of train-railway companies, enacted in 1855. How. Stat. chap. 94. This act was amended in 1861 by adding two new sections. Laws of 1861, p. 11. This amendment provided that it should be competent for parties to organize companies under the act to construct and operate railways in and through the streets of any town or city in the State, and that they should have the exclusive right to use the same, upon obtaining the consent of the municipal authorities of such town or city. A further amendment, in 1867, provided that, after such consent was given and accepted, such municipal authorities should make no regulations or conditions whereby the rights or franchises so granted should be destroyed, or unreasonably impaired, or such company or corporation be deprived of the right of constructing, maintaining, and

operating such railway in the street in such consent or grant named, pursuant to the terms thereof.

Bay City was incorporated by special act of the Legislature in 1865, taking effect March 21. Laws of 1865, p. 735. The charter provided that the common council should have power to grant charters, licenses, and privileges to companies, corporations, or persons for the construction of street railways on the streets of said city. In 1869 the charter of Bay City was amended. 2 Laws of 1869, p. 561. Section 98 of this act provided that the common council should have power to authorize the running of railroads and street railways in the streets of said city upon condition that the owners of the lots adjoining, and persons interested therein, should receive compensation therefor. This act also conferred other powers of control over such railways which were not conferred by the act of 1865, but it is unnecessary here to specify them. This provision has been retained in the charter ever since.

December 14, 1864, the common council of the village of Bay City passed an ordinance conveying to certain persons therein named, who then proposed to organize a corporation under the train-railway act, above mentioned, the right to use all the streets in the village of Bay City or its successor, exclusive of every other person or corporation, for the purpose of constructing and operating railways thereon. It provided that cars should be drawn by animals or by steam, made regulations for the running of trains, etc., and provided that the common council, when deeming it for the interest of the village or its successor, might order the construction of a railway on any street, and the corporation should build the same within two years after being notified, and in default thereof the council might declare the grant void as to such street.

The defendant organized, as above stated, in February, 1865, and during that season laid tracks, and commenced the operation of its road, extending the same from time to time as the common council, and the requirements of the public, demanded. July 5, 1887, the common council adopted resolutions requiring the defendant to construct a line of railway on Third street, and some other streets mentioned. On June 18, 1888, the common council appointed a committee to draft certain amendments to the street railway ordinance. They had a consultation with the proper officers of the defendant, and on June 25 made a written report stating that the defendant proposed to build a track on Third street, between Water street and Washington street, and recommended that the proposition of the company be accepted. The report was adopted, and thereupon the defendant immediately commenced the work of laying the track.

The complainants are the owners of separate lots on Third street, and the buildings situated thereon, used for business purposes. Upon the commencement of the work the complainants united, and filed the bill in this case, claiming that the construction of the road would be a damage to their property; that this street was not wide enough for the business then being done upon it; that no compensation had been paid or offered to any of the complainants, nor any steps taken to condemn a right of way through said street,—and prayed for an injunction to restrain the construction of the road. A preliminary injunction was granted by the court below, which was set aside upon the filing of the answer. The case was then heard upon pleadings and proofs, the bill dismissed, and complainants appealed. The testimony upon the question of damages is very conflicting. It is unnecessary to discuss it here; for, if the complainants are

entitled to recover damages, they must be left to proceedings under the statute to determine what damages, if any, they have individually sustained by the construction of the road.

1. Complainants were alike affected by the construction of this road. They were alike interested to restrain its construction. Their interests were therefore common. There was but one object to be accomplished, and no necessity existed for a multiplicity of suits. The defendant was not prejudiced by the joinder of complainants. We see no objection to parties joining in a suit, the sole purpose of which is to obtain an injunction to restrain the commission of an act threatened by one party, and alike injurious to the interests of all.

2. The defendant contends that, by the ordinance of 1864, and the legislation authorizing it, it acquired the fixed and vested right, for a period of 30 years, to use the streets for the purpose of constructing and using a street railway, without compensating adjoining owners, and that any subsequent legislation requiring it to compensate in damages for any injuries sustained thereafter by the construction of new tracks is void as impairing the obligation of contracts. It becomes, therefore, important to determine the power conferred by the Legislature upon the common council of Bay City. The council can, of course, confer no greater right upon the defendant than is authorized by its charter.

Municipal corporations derive their sole source of power from legislative enactments. The rule has been long and unquestionably established that municipal corporations are limited to those powers which are granted—

1. In express words.

2. Necessarily incident to the powers expressly granted.

3. Those which are essential and indispensable to the declared objects and purposes of the corporation. 1 Dill. Mun. Corp. § 89.

By the village charter, the common council was authorized to lay out and establish, vacate, open, make, and alter such streets as they might deem necessary for the public convenience. No mention is made in the act of train or street railways. The act incorporating the city provided that all the acts and ordinances of the common council of the village of Bay City not inconsistent with the laws of this State shall remain in full force until changed by the common council of the city; and the same section gives the power to grant charters to street railway corporations. These charters do not in express terms confer upon the council any such power as is now contended for. If it exists at all, therefore, it must be by implication.

The power to grant immunity to such corporations from legislative regulation and control is an important one. A village of a few hundred inhabitants may in much less than 30 years grow to a city of many thousands· Bay City well illustrates this fact. What in the one would cause no damage might in the other cause great damage. The village council cannot well provide regulations and ordinances applicable to a large city. It is, therefore, highly important that the Legislature should retain the power to pass enactments for the control of these *quasi* public corporations suitable to the changed state of affairs. Those who claim immunity from such control must be able to point to the clear enactment of the statute establishing it. In the case at bar, as already stated, no such express power can be pointed out; and it was neither necessary, essential, nor indispensable to enable the municipal corporation to carry out the objects and purposes for which it was created. It is clearly within the power of the Legislature to provide that street railway corporations shall pay such damages to owners of abutting property, in front of which they construct their

road, as this construction will cause. It follows, therefore, that the defendant accepted its charter subject to the right of the Legislature to prescribe conditions under which it might thereafter obtain the use of the streets of the city for the construction of new lines. The act of 1869, above mentioned, expressly limited the power of the council to authorize the running of street railways in the streets of the city upon the condition of compensation to owners of the lots adjoining. The act of the Legislature of 1881, revising the charter of Bay City, provided that the method of arriving at the compensation to be paid to the lot-owners shall be the same as provided by the general railroad laws of the State. The defendant was subject to the above provisions in making the extension of its road now in dispute.

The conclusion above reached renders it unnecessary to determine the other questions raised in the case, and we pass no opinion upon the liability of the defendant at the common law. The decree must be reversed, with the costs of both courts, and decree entered here restraining the defendant from the use of that part of its road extending on Third street between Water and Washington streets, until it has complied with the statute requiring condemnation proceedings, but giving a reasonable time for that purpose.

CHAMPLIN, C. J., MORSE and LONG, JJ., concurred.