PARKER, WEBB & CO. *v.* AUSTIN.

MUNICIPAL CORPORATIONS—REGULATION OF WEIGHING DEVICES—SCOPE OF AUTHORITY—ORDINANCES—VALIDITY.

The charter of a municipal corporation authorizing the common council to regulate weights and measures to be sealed by the city sealer "so as to be made conformable to the standards of weights and measures established by the general laws of this State," does not authorize the adoption of an ordinance requiring said city sealer to test and prove the accuracy of computing devices on scales by which the value of the article weighed is determined.

Appeal from Wayne; Brooke, J. Submitted April 15, 1909. (Docket No. 34.) Decided May 25, 1909.

Bill by Parker, Webb & Company and others to enjoin

George F. Austin, sealer of weights and measures of the city of Detroit, from condemning certain computing scales. From a decree for complainants, defendant appeals. Affirmed.

*Orla B. Taylor*, *John M. Zane*, and *Charles F. Morse*, : for complainants.

*P. J. M. Hally*, Corporation Counsel, and *Fred H. Warren* (*Albert H. Meads*, of counsel), for defendant.

Complainants in this case, five in number, are retail dealers in meats in the city of Detroit; each carrying on an extensive business. They use certain scales known as the "Dayton Moneyweight Spring-Balance Barrel-Shaped Computing Scales," and commonly known as the "Boston Butchers' Scales." These scales are manufactured by the Computing Scale Company of Dayton, Ohio, which owns the patents thereof, and are sold by the Moneyweight Scale Company, of Chicago, Ill. The complainants purchased and own these scales, and had used them for a long time; they having been properly sealed by the city sealer as correct. The defendant is the sealer of weights and measures for the city of Detroit. He threatened to condemn these scales and thus prohibit their use by the complainants and other merchants of Detroit. The complainants thereupon filed this bill to enjoin the defendant from taking this action, and thus destroying their property.

The scale in question is known as No. 63 scale. The platform of the scale, as in ordinary scales, is mounted upon a suitable base. From the base extend upward two arms upon which a stationary cylinder is mounted. Within this stationary cylinder is a revolving drum. At either end of the revolving drum are pinions or gear wheels. These pinions are worked by notched rods or racks, which in turn are worked by springs attached to the platform by a steel rod and thermostat, and when the weight is placed upon the scale the springs are elongated

and the rack operates the drum within the scale. The drum consists of an aluminum frame upon which is mounted a specially prepared paper chart, both very light materials, so that the friction is reduced to a minimum. The chart and the frame make up the drum which revolves within the cylinder. Down the center of the chart is a weight graduate and also an inverse weight graduate, giving graduations of weight for every ounce up to 24 pounds, which is the limit of the capacity of the scale. Upon either side of the weight graduate, figures are placed in direct alignment with each indication of weight for two ounces upon the weight graduate. These figures in horizontal columns are also arranged in perpendicular columns, and the drum is so placed inside of the stationary cylinder that each of the horizontal columns, when the drum revolves, shows through a slit on the face of the stationary cylinder. Immediately below the slit, across the stationary cylinder, are arranged figures which show the different prices per pound, and upon this particular scale the prices are 4, 5, 6, 7, 8, 9, 10, 11, 12, 12½, 13, 14, 15, 16, 17, 18, 20, 22, 23, 24, 25, 26, 28, and 30 cents per pound. Hence, when a weight is placed upon the scale, the weight is shown through an opening in the stationary cylinder in front of the weight graduate, and, in direct alignment with each weight graduation of two ounces, will appear, through the slit on the face of the stationary cylinder, the computed value of the particular weight at the different prices per pound; each value appearing above the figure on the outside of the stationary cylinder, indicating the price per pound. The figures appearing through the slit are made larger by a magnifying glass, and stretched the length of the slit is a wire, showing the line upon which the scale balances when empty, or in some of the scales the wire is replaced by a line upon the glass. This line, when it rests upon any two ounces of weight, indicates the value of such weight at the different prices per pound by means of the fact that the line bisects such value figure.

The No. 63 scale is made for the use of butchers or the fish market trade, for the purpose of weighing heavier articles than ordinary groceries, and for the purpose of weighing articles of smaller and lower values. Its chart is as large as can reasonably be made, and yet not be so heavy as to cause friction in its operation, and at the same time not have a centrifugal motion or a sort of a "fly wheel motion" as it rotates. The front of the scale faces the operator, and through the opposite side of the stationary cylinder, which faces the purchaser, is an opening showing the inverse weight graduation, but no computed values. Hence, in every weighing on the scale the purchaser sees the exact weight that is being given him by means of the weight graduate upon the purchaser's side of the scale, and, if the scale is brought to balance, that fact will show upon the purchaser's side as well as upon the dealer's side of the scale. The computed values that are placed upon the chart are mere matters of arithmetic found by multiplying the weight by the price per pound. The result of the computation is placed exactly opposite the proper weight graduation, so that each of the weight graduations for two ounces is in direct alignment with the computed value opposite, and this computed value must necessarily be indicated simultaneously with the indication of weight. In these computations there are no fractions whatever. Anything less than one-half cent is disregarded; anything amounting to a half cent or more is called a whole cent. The result would be that any fraction less than one-half cent is given to the purchaser, and any fraction amounting to half a cent or more goes to the dealer.

The case was heard upon pleadings and proofs, taken in open court. The scales in question and other scales manufactured by a competing company were introduced at the hearing in the court below. Many experiments were made before the trial court by witnesses for the complainants and the defendant. The defendant was represented by the attorneys for the competing company, in whose interest evidently the action on the part of the de-

fendant was largely taken. The complainants were represented by the attorneys for the company which sold them the scales. The trial court sustained the complainants' claim and entered a permanent injunction restraining the respondent from condemning their scales.

GRANT, J. ( *after stating the facts* ). The record presents two questions, one of law and the other of fact. The legal question is: Has the defendant, the sealer of weights and measures of the city of Detroit, the legal authority to determine the accuracy of computing devices and either to approve or condemn them ? The question of fact is: Is the computing device dishonest and false ? Or, stated otherwise, Does it give a greater price for the goods weighed and sold than the dealer is entitled to ?

1. It is conceded that the scale weighs the goods purchased with absolute accuracy, and that the amount of such weight is correctly exhibited to the purchaser upon one side, and to the seller upon the other side, of the scale. The sealer is therefore bound under the law to place his seal of approval upon the weighing part of the machine, because it fully complies with the law. If this chart, showing the price of the commodity, was attached in a stationary way upon the front of the scale facing the seller, or upon the wall beside the scale, or upon the counter, so that the seller seeing the weight could look at the chart and find the price, it would still be a computing device, subject to the same criticism that it is when placed upon a revolving drum. The sealer can no more condemn the scale in one case than he can in the other, because in each case the weight is the same and is correct. The seller and purchaser are then upon an equal footing. The purchaser, knowing the weight and price per ounce or pound, can make the computation himself. The method by which the seller reckons the total price to be paid is of no material consequence to the purchaser. The seller may arrive at the price by mental process or with paper and pencil,

or he may have a chart which shows the value of any amount purchased. This process does not enter into the transaction. It can make no difference to the purchaser how the seller arrives at the result. The purchaser is at no disadvantage so long as he is furnished the means to determine the accuracy of the charge made by the seller. The legal question is therefore narrowed to this: Is the sealer of weights and measures clothed with authority to condemn a chart adopted by the seller for his convenience and expedition in making sales?

By an amendment to the ordinance of the city of Detroit in 1906, it was made to read as follows:

"The sealer of weights and measures shall test and prove all computing scales as to weights and values, and any such scale which may be found to give any weight other than the correct weight for any money value indicated, shall be condemned; otherwise they shall be approved."

The congress of the United States has power to establish and adopt standards of weights and measures. These standards were early adopted by this State, and have continued in force ever since. Act No. 42, Laws 1837; 1 Rev. Stat. 1838, pt. 1, tit. 7, chap. 3; 2 Comp. Laws, § 4882 et seq. The statute provides for furnishing these weights to each county and township in the State, and for an annual comparison of the scales and weights therein with the standards so furnished. It was held in *McGeorge* v. *Walker*, 65 Mich. 5, that the only comparison to be made is with the standard weights so furnished. The legislature by the charter of the city of Detroit has expressly authorized the common council to regulate weights and measures to be sealed by a city sealer "so as to be made conformable to the standards of weights and measures established by the general laws of this State." Act No. 55, Laws 1857, chap. 5, § 21, subd. 54. This is the sole power conferred by the legislature upon the common council. "Implied powers" are those which arise from, and are necessary to carry out, the powers expressly

conferred upon municipalities.  *Taylor* v. *Railway Co.*, 80 Mich. 77.  The express power to examine and determine the accuracy of scales as to weights does not by implication confer upon the council the right to determine the accuracy of charts, ready reckoners, adding machines, or other devices by which the value of the goods weighed shall be determined.  The object of the statute is to determine the accuracy of weighing, not the accuracy of the process by which the price is found.  The statute aims to protect the public from false weights and measures, and not from the dishonesty of dealers in reckoning the cost of the goods purchased.  *Bisbee* v. *McAllen*, 39 Minn. 143; *Gundling* v. *City of Chicago*, 176 Ill. 340 (48 L. R. A. 230).  In the latter case it was held that the power conferred upon the common council " to regulate the sale of meats, poultry, fish, butter, cheese, lard, vegetables and all other provisions, and to provide for place and manner of selling the same," did not confer upon the council the power to regulate the sale of tobacco.

There is no hint in the charter of any intent on the part of the legislature to confer upon the common council the power to regulate or prescribe methods by which merchants compute the cost of purchases made by their customers, or to supervise adding machines, charts, ready reckoners, or other devices by which the cost is ascertained. It is, however, insisted that this right exists under the general police power inherent in, and conferred upon, municipalities by the very act of their existence.  Under the contention of counsel for the respondent, the common council of every municipality in the State is clothed with power to send its employé into the store of every merchant to investigate and condemn every method employed by the merchant which, in the judgment of such employé, may be used to state an incorrect result.  The statement of the proposition would seem to afford its best refutation. We are cited to no authority holding that a municipality is per se clothed with authority to investigate business transactions between merchants and their customers.

The chart in question is conceded to show the correct price for even ounces and for pounds. Only in case of fractions of the odd ounce is it claimed to be susceptible of dishonest operation. A dishonest merchant under any method can defraud his customer who does not himself take care to estimate the cost. The chart saves time to both seller and purchaser and greatly facilitates business.

Counsel cite and rely upon *Harbison* v. *Knoxville Iron Co.*, 103 Tenn. 421 (56 L. R. A. 316), affirmed in 183 U. S. 13; *City of Crawfordsville* v. *Braden*, 130 Ind. 149 (41 L. R. A. 268); *Gundling* v. *City of Chicago*, 176 Ill. 340 (48 L. R. A. 230); *Bluedorn* v. *Railway Co.*, 108 Mo. 439; *Moneyweight Scale Co.* v. *McBride*, 199 Mass. 503. *Harbison* v. *Knoxville Iron Co.* did not involve or discuss this inherent police power of a municipal corporation. The act before the court was a legislative act and involved the power of the legislature and not a municipality. *City of Crawfordsville* v. *Braden* involved the right of a municipality under the expressly conferred power to light its streets, alleys, and other public places with electric light, etc., to furnish electric light for private houses and business places for a consideration. The right to do so was sustained upon the ground that "a light thus produced is safer to property, and more conducive to health than the ordinary light." Whether under our Michigan decisions the rule of the Indiana court would be sustained—quære? In this State the power has been conferred by legislative enactment. In *Gundling* v. *City of Chicago* the sole question, aside from the one above referred to, was whether under the express authority to provide for and regulate the inspection of tobacco an ordinance regulating the sale of cigarettes was valid. In *Bluedorn* v. *Railway Co.* the sole question was the power of the city to regulate the speed of railroad trains through the city. The soundness of that decision cannot be questioned, as it involved not only the right but the duty of every municipality to protect the lives and persons of its citizens. It, however, furnishes no

authority for interference in commercial transactions between its citizens. It is sufficient to say of *Moneyweight Scale Co.* v. *McBride* that it involved the inherent power of the legislature, and not of a municipality, the creature of the legislature. It is worthy of remark here that the court in that case held that "the correctness of these scales is not now before us." The court decided that the statute required the charts to be arithmetically correct, and sustained the law upon that basis. It also held that, if it conferred upon the sealer the power to determine the commercial correctness of the chart, it was unconstitutional.

Where power was conferred upon the municipality to prohibit any one from circulating, distributing, or giving away circulars, hand bills, or advertising cards of any description in or upon any of the public streets and alleys of the city, it was held that:

"This is not an express grant of power to the city of Detroit to pass a by-law or ordinance to prohibit a person from circulating, distributing, or giving away circulars, hand bills, or advertising cards of any description, in or upon any of the public streets and alleys of said city, and to punish by fine and imprisonment in the county jail or the Detroit house of correction for violation, and there is no such power implied in these provisions of the charter." *People* v. *Armstrong*, 73 Mich. 288 (2 L. R. A. 721).

All we now need to decide is that the power of inspection and regulation in such matters must find its authority in some express provision of the legislature. If at any time the legislature, conceiving that dishonest means are employed by merchants in selling their goods, shall enact a law conferring power upon municipalities to supervise and regulate them, it will then be time for the courts to determine the validity of such an enactment. Until then we choose not to discuss it.

The decree is affirmed, with costs.

BLAIR, C. J., and MONTGOMERY, OSTRANDER, and McALVAY, JJ., concurred.