CITY OF DETROIT *v.* DETROIT UNITED RAILWAY.[1]

1. MANDAMUS — STIPULATIONS — STREET RAILWAYS — MUNICIPAL
   CORPORATIONS—PAVEMENTS.

    Respondent railway company operated under a franchise from
   the township of Springwells requiring the railway company
   to pave between its tracks with cobblestones. The franchise
   had been granted to another corporation at a time when the
   line was operated by horse and the traffic was light. Becom-
   ing the assignee of the franchise rights, respondent electrified
   the system and traffic greatly increased. Subsequently, the
   village of Delray, in which the franchise was in force,
   adopted brick pavement with a concrete foundation, and,
   on respondent's refusal to change accordingly the pave-
   ment between its rails, brought mandamus to compel a com-
   pliance with the requirement. An agreement or stipulation
   was entered into between the parties, without prejudice to
   the rights of either, to permit respondent to lay a macadam
   pavement which was constructed accordingly, and, as re-
   ·lator claims, for an experiment: under the stipulation, the
   .mandamus proceedings remained suspended until such time
   as the village council might direct. The village being an-
   nexed to the city of Detroit, the city council brought the
   proceedings on for hearing. *Held,* that conditions had not
   so changed that the proceedings ought to be dismissed with-
   out prejudice.

2. MUNICIPAL CORPORATIONS—STREET RAILWAYS.

    In granting franchises and privileges to public utility corpora-
   tions to construct and maintain roads in streets, etc., the
   municipality does not and cannot surrender or circumscribe
   its right to the exercise of general police powers, or limit its
   authority to maintain the streets in reasonably safe condi-
   tion.[2]

3. SAME—CONSTITUTIONAL LAW.

    It was not unreasonable to require respondent to change the
   pavement, or to bring the tracks to a grade uniform with the
   streets, or to require it to cut off the ties projecting beyond
   the outer rails.

    [1] This cause was removed to the United States Supreme Court by
writ of error, January 8, 1913.

    [2] As to municipal power to impose conditions when giving con-
sent to railway in street, see note in 36 L. R. A. 33.

Certiorari to Wayne; Donovan, J.   Submitted April 16, 1912.   (Calendar No. 25,042.)   Decided November 8, 1912.

Mandamus by the city of Detroit to compel respondent, the Detroit United Railway, to pave between certain of its tracks and make other required improvements.   An order dismissing the petition is reviewed by relator on writ of certiorari.   Reversed.

*Bernard F. Weadock (Richard I. Lawson,* of counsel), for appellant.

*Brennan, Donnelly & Van De Mark (John J. Speed,* of counsel), for respondent.

McALVAY, J.   This case is before the court upon a writ of certiorari to mandamus proceedings to the Wayne circuit court.   Relator asked for a writ of mandamus to compel the paving with brick of the space between its tracks by respondent, as required by resolution of the village of Delray.   In such proceedings, by reason of the fact that the territory in question had been annexed to the city of Detroit, by an order of the court made in this case, the city was substituted for the village.   Before such annexation and after issue joined in the mandamus proceedings, an agreement was entered into between the village authorities and the respondent, without prejudice to the continuance of the mandamus suit or to the rights of either party, under which a macadam pavement was laid.   Later the common council of the city of Detroit, by resolution, directed its officers to bring these proceedings to a hearing as soon as possible.   Upon a hearing of the case before Judge Donovan, an order was granted that respondent repair this macadam pavement within 30 days, and upon proof of such repair the petition be dismissed.

The franchises to respondent's predecessor in title were granted by resolutions adopted by the township of Spring-

wells, dated, respectively, July 26, 1886, December 14, 1891, and December 26, 1891. The requirements as to pavement between the tracks were as follows: In the first grant to be paved in the same manner and maintained as certain other portions of its track described; and in the second and third grants "to be paved with cobblestones in the same manner as the balance of the track is now paved." The portions of the track mentioned in the first grant were also paved with cobblestones.

The petition for mandamus sets up the facts above stated, and, further, the adoption by the village of Delray of a certain pavement—brick with a concrete foundation —and the contract entered into for the purpose of constructing the same, and shows that for that purpose it will be necessary to bring the tracks of the railway to the grade established, to cut off the ties projecting beyond the outer rail, in order to prevent injury to the new pavement by vibration; that under the grant to respondent it was its duty to pave between the outer rails of the tracks operated by them, and was and is its duty to observe and obey the reasonable orders of the council in respect to such paving; that it was originally paved in cobblestone, which, for the purposes of the new pavement, are no longer practicable or proper by reason of the soft foundation and vibration; that originally the road was operated by horse cars of light weight and but little used; that the railway at present is operated by electricity, by suburban passenger and freight cars of very great weight; that River street, where this railway is located, is the main street through Delray, which had a population in 1905, when these proceedings were begun, of 6,000 inhabitants. Due notice was given of this action taken by the village of Delray, and of the requirements under it to be performed by respondent.

In its answer to this petition, respondent admitted the material facts above stated as to the origin of its franchises and its duty under its franchises to pave between the outer rails of its tracks operated by it, and also admitted the later action relative to requiring brick pavement upon a

concrete foundation to be put in by respondent, and admitted notice of such requirement and its refusal to comply with the resolution. It denied that the ties were laid, as alleged, upon a poor foundation, and are appreciably of different lengths, and denies that, in order to properly grade and pave the street, it is necessary that any portion of the ties be cut off, and that the passage of cars will, by vibration or otherwise, injure the concrete pavement alongside of the rails, or destroy the same, or make the highway dangerous for passage. It denies that cobblestone construction is obsolete, or that the foundation is poor, and that the contractor is unable to lay the concrete and brick pavement by reason of the refusal of the respondent to conform with the requirements of the council; and it claims that, while admitting it is its duty to raise its tracks to the proper grade and repave between the outer rails with the material mentioned in the grants, it is not its duty to cut off the projecting ends of the ties, which, it claims, is unnecessary, as it has learned from long experience to allow them to so project, and that if cut, as required, it will be impossible to spike, brace, or adjust its rails to the ties supporting the traffic, and work irreparable injury; that its rails are from 77 to 100 pounds weight to the yard, and the track would collapse in case the ties were cut off as required. And, further answering, says that it has been willing, and is now willing, to place its tracks upon a foundation of crushed stone, extending the full width of its ties, of about 21 inches deep, thoroughly tamped and rolled, between the ties, and to fill the space between the outer rails and the ties with macadam pavement of first-class construction, which, it alleges, is demonstrated to be the best pavement now in use for such purposes. And, further, that the expense of such pavement, as contemplated by the city, will be $40,000 in excess of the cost to it of the construction as contemplated by respondent, and is not as serviceable or durable; and further claims that the requirement of the village to make this pavement different from that required by the terms of

such grants is in violation of its rights under the Constitution of the United States, by impairing the obligation of existing contracts.

It appears from the record that under a temporary agreement respondent brought its tracks to grade on this street and constructed a macadam pavement the entire distance between the outer rails of its two-track system, and also a foot of brick pavement on each side, beyond such rails, the same as the brick pavement, with concrete foundation, upon the remaining portion of the street.

The claim is made and strongly urged by counsel for respondent that, by reason of the fact that under the agreement entered into between the parties, without prejudice, respondent proceeded to and did put in the macadam pavement, that conditions are so changed from those existing at the time of joining issue in this case that no determination by this court of the rights of the respective parties to this proceeding can or ought to be made, but that the petition should be dismissed without prejudice to relator. This contention does not appeal to us, under the circumstances upon which the macadam pavement was put in by respondent. In making such claim it appears to the court that counsel for respondent have overlooked the terms and conditions of the agreement entered into between the parties. By its express terms the mandamus proceedings were suspended until a date certain—

"And until such time as the village council may direct; it being understood between the parties hereto that neither party shall gain or lose any of its substantial rights by this agreement, and that it is without prejudice to the rights of said village and said railway, as asserted in the petition and answer above referred to."

This agreement was entered into May 13, 1905. The proceedings under it were suspended until September 19, 1911, when the city of Detroit, successor to the village of Delray, directed its proper officer to proceed to a hearing of the case. Under these facts, the court must hold that both parties contemplated a determination of their rights

upon the petition and answer, in the same manner as if the macadam pavement had not been constructed. It is claimed by the relator that it was put in as a test pavement, and we do not find such claim to be contradicted by respondent; and the court, upon the case presented by the record before us, will proceed as if no such agreement had been entered into.

It is the contention of respondent that under its franchises, the requirement as to the kind of pavement authorized having been complied with, such requirement cannot be changed, and that to do so would be in violation of the Constitution of the United States, in that it would impair the obligation of an existing contract. In other words, that by these franchises respondent acquired a vested right to always maintain a cobblestone pavement.

It is not contended directly that a municipality cannot retain that control over the public streets and highways which is necessary for the protection and proper use of the public; but by indirection the contention of respondent goes to that extent. A municipality, in granting franchises and privileges to public utility corporations to construct and maintain their roads in and upon the streets and highways, does not and cannot surrender or circumscribe its right to the exercise of general police powers. If the contention of respondent in this respect should be accepted, such would be the result, regardless of the change of conditions and circumstances, or the requirements necessary to maintain the streets and highways of a municipality in a reasonably safe condition for the use of the public. It would be impossible, during the life of the franchise, to make the necessary changes required for the public use and safety.

In our opinion, the great weight of authority is against such contention. The law upon this proposition is well stated by an eminent text-writer, as follows:

" It is a general rule that the right to exercise the police power cannot be alienated, surrendered, or abridged, either by the legislature or by the municipality acting under

legislative authority, by any grant, contract, or delegation, because it constitutes the exercise of a governmental function without which the State would become powerless to protect the public welfare. Hence, when a franchise or privilege is granted to use the city streets for a public service, the grantee accepts the right upon the implied condition that it shall be held subject to the reasonable and necessary exercise of the police powers of the State, operating either through legislative enactment or municipal action." 3 Dillon on Municipal Corporations (5th Ed.), § 1269.

To the same effect are the decisions of this court.

A case in point is where a street railway had used a T-rail, claimed to be unsuitable for streets paved with brick, and the municipality, by ordinance, required the railway to substitute a grooved rail. We quote from the opinion:

"Under respondent's contention, it could practically prevent any improvement in paving, or the adoption of new and better material, unless it could be used in connection with the T-rail, which the respondent had the right to lay when the road was constructed, and which it now claims the right to relay and maintain. It could not be compelled to substitute the grooved rail for the T-rail, even if the city should offer to pay the expense; for it claims that the right to lay the T-rail was a part of the contract, which cannot be taken away. The amended ordinance does not impair the franchise conferred upon the respondent. The city recognizes respondent's right to the use of the street, to run its cars, and to charge the fares fixed by the ordinance. It only claims that conditions have changed, requiring essential changes in the character and manner of paving, and that the respondent must so construct and equip its road as to meet these changed conditions. In other words, the relator only claims that the respondent must lay new and different rails, at greater cost than that of the old ones. The respondent is deprived of none of its property, unless the increase in cost in consequence of the improvement amounts to such deprivation. It is essential that municipalities retain that control over the public streets and highways which is necessary for the protection and proper use of the public. Courts will jealously guard the right

of such control. It must be a very plain provision, indeed, in a contract, which will justify the courts in holding that this power has been conveyed away. Where doubt exists, such contracts will be construed against the surrender of such power." *City of Kalamazoo* v. *Traction Co.*, 126 Mich. 525, at page 531 (85 N. W. 1067).

See, also, *Taylor* v. *Railway Co.*, 80 Mich. 77 (45 N. W. 335); *People* v. *Railway Co.*, 116 Mich. 132 (74 N. W. 520); *Detroit, etc., Railway* v. *Commissioner of Railroads*, 127 Mich. 219 (86 N. W. 842, 62 L. R. A. 149); *City of Detroit* v. *Railway Co.*, 90 Mich. 646 (51 N. W. 688).

It is suggested that these cases depended upon a construction of ordinances which, unlike the grants in the instant case, reserved certain rights, and are therefore not in point. The grants in those cases were with reservations of rights in the municipalities; but it is evident from the opinions that this court decided the cases upon the ground that the grants were accepted "subject to the reasonable and necessary exercise of the police powers of the State." We are convinced that the trend of the authorities and the attitude of this court is favorable to the protection of the rights of the public in the reasonable and necessary exercise of such powers, and hold in the instant case that these grants to use the public streets were accepted upon the implied condition that they should be held subject to such power, the necessity for the exercise of which is to be determined by the municipal authorities. In the exercise of its powers reserved to it to maintain its streets in a safe condition for the public use, the municipality is the judge for the necessity for repairing the pavement and repaving its streets, and its rights to do so cannot be surrendered: and it may impose such reasonable requirements upon the grantees of franchises given to street railways as to conform with changes which may be determined to be necessary and essential for the protection of the public.

The remaining question to be considered is the question

of the unreasonableness of the requirement of the municipality in the changes imposed upon the respondent.    Considering the situation as of the time when the respondent was notified and requested to conform with these requirements, this court cannot hold that they were unreasonable. Clearly not as to the requirement to put a pavement between the rails similar to that on the balance of the paved street, for the reason that it is apparent that to have a uniform pavement the whole width of the street would be the most satisfactory and safe.    It is conceded that to bring the track to a uniform grade with the new pavement was not unreasonable.    The other requirement, relative to cutting the ties projecting beyond the stringers under them, was before this court in the case of *City of Detroit* v. *Railway Co.*, *supra*, which is now a portion of respondent's system, where the same contention of unreasonableness was made; and it was held by the court that such requirement was not unreasonable.    It is true that that decision might have been based partly upon a concession made in the case; but the same conditions upon which the court then acted are present in the instant case.    In our opinion, the requirement was not unreasonable.

The order of the court dismissing the petition is reversed, and a writ of mandamus will issue according to the prayer of the petition.

MOORE, C. J., and STEERE, BROOKE, STONE, and OSTRANDER, JJ., concurred.    BIRD, J., did not sit.