## CITY OF DULUTH v. DULUTH STREET RAILWAY COMPANY.[1]

### June 29, 1917.

### Nos. 20,270—(101).

**Street railway — liability for paving street.**

1. Defendant's franchise prescribes that "the company shall pave or otherwise improve the space between the rails of their tracks, unless otherwise provided by the village (city) council, so that it shall substantially correspond with the improvement of the street outside said tracks, except that in case other than animal power is used the company shall be required to pay only so much of the expense of paving the street as is made extra by reason of said railway." Another section therein provides that the "company shall keep the space between the rails in proper repair."

**Same.**

2. The word "railway" as used in the quoted part is not confined to the track but includes the operation of cars upon the track. And, having in mind the long duration of the franchise, it is considered that the parties anticipated progress in the mode of operating street railways as well as in ideas concerning street pavements. In respect to the operation of street railways, there are now heavy and rapidly moving cars

[1]Reported in 163 N. W. 659.

necessitating deeper foundations for pavements where the track runs; and in respect to pavement, advanced ideas require residential streets to be paved for no greater width than necessary to accommodate ordinary travel, hence it may be justly said that for any extra width made necessary by the existence of the railway upon the street the defendant should pay.

**Same.**

3. As supporting this conclusion may be adduced the holding of eminent authority that, in the absence of contract provisions, a railway company, by occupying a portion of the street with its tracks, becomes obligated to keep the space so occupied improved or paved to correspond with the rest of the street; also pointing to the same conclusion is the section providing that defendant shall keep the space between the rails in repair.

**Franchise construed strictly.**

4. Where a franchise is granted to occupy a public street, it is to be construed strictly as against the grantee.

**Practical construction not conclusive.**

5. The practical construction heretofore placed upon the provision in question by the city authorities was not made under similar situations to the one here presented, and it is doubted whether such authorities could conclude plaintiff in any event, the state being a party to this franchise.

Action in the district court for St. Louis county to recover $6,303.40, that portion of the expense of paving Ninth street in the city of Duluth caused by the presence of defendant's railway tracks. The case was tried before Dancer, J., who made findings and ordered judgment against defendant in the sum of $1,644.61. Defendant's motion for amended findings was granted in part and denied in part. From an order denying its motion for a new trial, defendant appealed. Affirmed.

*Washburn, Bailey & Mitchell, N. M. Thygeson* and *Thomas S. Wood,* for appellant.

*John E. Samuelson,* City Attorney, and *Francis W. Sullivan,* Special Counsel, for respondent.

HOLT, J.

The city of Duluth paved a certain distance of Ninth street. On the part so paved the defendant has tracks upon which are operated

its electric street railway cars under a franchise duly granted. The pavement is 42 feet wide from curb to curb, where the street car tracks are laid. For a portion of the distance paved there are double tracks and over the rest there is a single track. A dispute arose in respect to the amount the street railway, under its franchise, was obligated to pay towards the cost of paving, and the city brought this action to have the amount determined and collected. The trial court concluded that defendant was liable to pay for 10 feet of the 42 feet paved where it had double tracks, and for 5 feet where it had a single track. Defendant moved for a new trial. From the order denying the motion this appeal is taken.

The sole question is the construction or meaning to be given the contract governing the rights of the parties as contained in section 6 of the franchise granted defendant by the legislature in 1881, which, so far as here material, reads: "And in case said village shall at any time pave or otherwise improve the surface of any street along which said railway may run, said company shall pave or otherwise improve the space between the rails of their tracks unless otherwise provided by the village council, so that it shall substantially correspond with the improvement of the street outside said tracks, except that in case other than animal power is used the company shall be required to pay only so much of the expense of paving the street as is made extra by reason of said railway."

Section 10, which may have a suggestive bearing on the proper meaning to be given section 6, reads: "Said tracks shall be laid in the center of the street in all cases where it is practicable to lay them, and said tracks shall not be laid within 12 feet of the sidewalk upon any street where it is practicable to be avoided, and said company shall keep the space between the rails in proper repair, so as not to interfere with travel over the same."

The contention of defendant is that, when other than animal power is used to propel its street cars, no obligation rests upon it to contribute towards paving the street, if that be ordered, except for the extra expense in laying the pavement by reason of the existence of the track in the street. This would include the extra labor to fit the pavement to the rails and ties, the proper and safe adjustment of the

paved track to the rest of the pavement, by having a heavier foundation thereunder and by stretchers and headers along the rails so as to reduce the danger of injury to the pavement from vibration when the heavy cars pass rapidly over the track.

The claim of plaintiff is that whatever extra expense is incurred in paving a street, by reason of the existence and operation of defendant's railway thereon, over and above what would be required were the railway not there, falls upon defendant. That this includes not only stretchers and headers, fitting the pavement to the rails, the increased depth of foundation for the pavement under the track, but also the increased width made necessary on account of the railway. Therefore when, as here, a 26-foot pavement was ample for the accommodation of public travel, had defendant not occupied the street, it should bear the extra expense of the additional 16 feet made necessary because of such occupancy.

The court below concurred in plaintiff's interpretation of the franchise, but held that only 10 feet additional width of paving was made extra by the existence of the railway where double tracked, and 5 feet where single tracked.

The contentions of both parties have been most thoroughly presented; and every paving proposition involving any part of a street railway track in Duluth is in the record, on the theory that the parties have given a practical interpretation of the franchise provision which should be accepted by the courts. In this practical construction plaintiff also finds some comfort, because admittedly defendant paid for extra foundation or beams under its tracks, hence the argument is: If the company has conceded the obligation to pay for extra depth, it follows that it should pay for extra width when required. Defendant, on the other hand, says that no claim for extra width was ever asserted, and that uniformly it settled with the city by paying only the extra expense of fitting the pavement to the rails, and such extra price as certain material, found necessary and convenient to use against or between the rails of the track, costs more than the material composing the balance of the pavement, together with such extra foundation or other means as have been found expedient to avoid injury to the pavement from vibration and jars from the operation of the cars.

137 M—19

In construing section 6 defendant insists that in the clause, "as is made extra by reason of said railway," the word "railway" is synonymous with track and does not include the operation of cars thereon. This seems too narrow a view. As stated, defendant's past conduct is indicative of a contrary understanding. Apparently without coercion it has paid for extra means employed in the construction of the pavement to avert injury thereto from the operation of the cars over the tracks. We have no doubt that as the word railway is used in the quoted clause it means the tracks with cars moving thereon. We cannot place too literal construction upon this franchise which was to run for such long time. Neither as to pavement, nor as to a street railway, could it have been contemplated that the future construction or operation should be as of the time the franchise was granted. All parties looked for improvements. Motive power other than animal was anticipated. And we dare say the actual advance has been greater than the most sanguine could have hoped for. As illustrative of the fact that even the terms of a grant must yield to progress, we cite the case of City of Detroit v. Detroit U. Ry. 172 Mich. 496, 138 N. W. 215, where it was held that, notwithstanding the franchise provided that the street car company should pave between the rails with cobble stones, it could be compelled to use other material when modern needs so required. We think this franchise clearly contemplates that defendant should share in the burden of paving, at least to the extent that its railway line increased such burden. It is plain that by section 10 it must maintain or keep in repair the space between the rails, and it is equally plain that, so long as animal power was used, defendant must pave between its rails whenever the street is ordered paved whereon is a street car line.

Having in mind that it must have been contemplated at the time the franchise was granted that progress or advancement in the matter of pavement would be likely, and that this might include not only the kind of pavement, but the extent as to roadway, we believe the construction which the court adopted is near at hand. The modern idea of proper streets is to pave only so much as will accommodate the vehicles traveling thereon. This results in a narrow roadway in residential districts and wide in business districts. In the former there are thus left wide

boulevards which tend to beautify the surroundings and keep the noise and dust of the traveled portion further from the dwellings; whereas in business portions, the space from sidewalk to sidewalk is needed to care for vehicle traffic. If a street car line is operated upon one of the residential streets, a wider roadway than otherwise is imperative, so as to permit passage for vehicles between the cars and vehicles that might be temporarily standing at the curb. Thus the conclusion is warranted that, because of the railway upon the street, there is made an extra expense of paving equivalent to the extra width made necessary on account of the railway. This extra width could in no event exceed the space occupied by the track and therefore imposes no greater burden than was imposed when animal power was used.

Of course, it must be conceded that there is much to favor defendant's interpretation in the claim that the reason for requiring defendant to pave between the rails when cars were propelled by animal power was that the animals, traveling between the rails, wore out the pavement, but when other power is used no wear upon or use of the surface of the pavement is made by the operation of the railway, hence no reason for asking it to stand any expense for paving its roadway more than the rest of the street. But, on the other hand, it is plausible to reason that since defendant is bound to keep the space between its rails in repair, which under the authorities may require a new paving when the old is worn out, no intention should be read into section 6 of relieving the company from the duty to pay for paving between the rails, as an original proposition, unless the reading of the franchise is entirely clear to the contrary. It may be maintained with considerable force, that when animal power was used the railway could select and lay in any manner it chose the pavement between its rails, so long as it fairly corresponded with the adjacent paving, but, when other than animal power was employed, defendant had no voice in the selection of the pavement on the strip occupied by its tracks, its duty was then to pay the cost added on account of its railway, that is, for the space between its rails, which is to a large extent withdrawn from the public, or rendered objectionable for the ordinary street vehicles. In other words, as to the space between the rails of defendant's tracks it is obligated, while using animal power, to pave or otherwise improve the

same so as to substantially correspond with the improvement of the street outside the tracks. This was no doubt left to defendant to do, at the time the franchise was granted, for the reason that it thereby had free hand to select such material as was best adapted for the use of animals employed to pull the cars, but, if ever other propelling power was adopted, then plaintiff and not defendant should make the improvement or lay the pavement over the whole street, and defendant should pay such cost as is made extra because of its railway.

It is true that the liability here claimed is based upon contract, the franchise, and not upon a common law obligation. But it is not amiss in construing this franchise to have in mind that there is high authority for the rule that, in the absence of contract obligations, it is the duty of a street railway company, occupying a street with its tracks, to maintain by proper pavement, or otherwise, the space so occupied so as to correspond with the condition in which the rest of the street is kept by the municipality. In Reading v. United Tr. Co. 215 Pa. St. 250, 254, 255, 64 Atl. 446, 7 Ann. Cas. 380, the court held that no matter how street railways come to occupy the street, unless expressly relieved from keeping in repair the portions occupied, the occupation carries with it the liability to keep in repair, saying:

"When street railway companies occupy portions of streets, such portions are no longer in the free, unencumbered and exclusive use of the public, but to the companies is given not only a concurrent, but a superior, right to use them, and with this right goes a corresponding responsibility. * * * It is because the municipality, as the agent of the state, has charge of the streets, that it must maintain and keep them in proper repair, and when the state permits this charge, as to a portion of a street, to be committed to another, it must be understood as imposing upon such party the responsibility that formerly rested upon the municipality, unless in the grant, or in the municipal consent thereto, of the right to use a portion of the street, such responsibility is expressly withheld and its imposition continued upon the municipality."

This view is evidently sanctioned by the Supreme Court of the United States in Southern Wis. Ry. Co. v. City of Madison, 240 U. S. 457, 36 Sup. Ct. 400, 60 L. ed. 739, wherein is cited the foregoing case from Pennsylvania and also Reading v. United Tr. Co. 202 Pa. St. 571, 575,

52 Atl. 106. In this last case, speaking of repairs, the court says: "Of course, all this refers solely to the company's right of way, its duty to repair which exists with or without contract, and with or without express legislative declaration, that is to say, exists as a common-law duty." See also Philadelphia v. Ridge Ave. P. Ry. Co. 143 Pa. St. 444, 22 Atl. 695; City of Philadelphia v. Thirteenth and Fifteenth St. P. Ry. Co. 169 Pa. St. 269, 33 Atl. 126; North Hudson Co. Ry. Co. v. City of Hoboken, 41 N. J. Law, 71; Railway Co. v. State, 87 Tenn. 746, 11 S. W. 946; and City of Emporia v. Emporia Railway & L. Co. 92 Kan. 232, 139 Pac. 1185.

Section 10 of the franchise lays the duty upon defendant to keep the space between the rails in proper repair. This, during the long franchise of 50 years, undoubtedly requires an entire renewal more than once of whatever pavement might be laid originally. As similar provisions are frequently construed by the courts, any repavement, necessitated by giving way of the original or by the substitution of other more modern or reasonably convenient pavement, must be borne by a street railway company on the portion occupied by its tracks. This idea is somewhat repugnant to the thought that by section 6 the legislature intended to relieve defendant from the cost of originally paving the space between the rails of the track.

Among the authorities construing provisions for repair to include repaving may be mentioned City of New York v. Harlem B. M. & F. Ry. Co. 186 N. Y. 304, 78 N. E. 1072; State v. Milwaukee Elc. Ry. & L. Co. 151 Wis. 520, 139 N. W. 396, Ann. Cas. 1914B, 123; City of Madison v. Southern Wis. Ry. Co. 156 Wis. 352, 146 N. W. 492 (affirmed in 240 U. S. 457, 36 Sup. Ct. 400, 60 L. ed. 739, supra); Elliott, Roads and Streets (3d ed.) §§ 987 and 988. There are authorities to the contrary cited in State v. Milwaukee Elc. Ry. & L. Co. supra, and in Western P. & S. Co. v. Citizens St. R. Co. 128 Ind. 525, 26 N. E. 188, 28 N. E. 88, 10 L.R.A. 770, 25 Am. St. 462.

The rule that provisions in a franchise of this sort, which impairs to some extent the public right to the exclusive use of streets, are to be strictly construed, points to the conclusion that section 6 was not intended to relieve defendant from the burden of paving the portion of the street it occupies. With reference to precisely this question of

paving, the Supreme Court of the United States in the case herein-before cited (at 240 U. S. 461, 462) states: "The reasons for con-struing such ordinances strictly in favor of the public are reiterated in the present case. Knoxville Water Co. v. Knoxville, 200 U. S. 22, 33, 34 [26 Sup. Ct. 224, 50 L. ed. 353]; Blair v. Chicago, 201 U. S. 400, 472, 473 [25 Sup. Ct. 427, 50 L. ed. 801]. Both of the grounds taken by the court below get some support from decisions of this court. Fair Haven & Westville R. R. Co. v. New Haven, 203 U. S. 379, 389, [27 Sup. Ct. 74, 51 L. ed. 237]; Detroit v. Detroit Citizens' Street Ry. Co. 184 U. S. 368, 397 [22 Sup. Ct. 410, 46 L. ed. 592]." See also Norfolk & P. T. Co. v. City of Norfolk, 115 Va. 169, 78 S. E. 545, Ann. Cas. 1914B, 1067.

As opposed to the trial court's interpretation of the clause involved, we freely concede the force of the argument based upon the practical construction placed by the city authorities thereon. It is true, the precise point here presented has, perhaps, not arisen in previous pav-ing undertakings in the city; but in dealing with the question of pave-ment, it is clear from the manner in which the authorities invited bids and presented bills to defendant, for its share of the expense, that it did not occur to them that it might be the duty of defendant to pave any extra width because of its occupation of the street. What militates against the argument is the fact that the early pavements occupied the whole width of the street from sidewalk to sidewalk, and therefore the contention now made could not be advanced. Furthermore, it is doubtful whether the city authorities may, by a practical construction, fritter away the rights of the public. City of Detroit v. Detroit U. Ry. 172 Mich. 496, 138 N. W. 215. To this franchise not only plain-tiff and defendant but also the state was in express terms a party, and all three are bound by the terms thereof. There is no evidence of a practical construction on the part of the state authorities. De-fendant's contention, in respect to practical construction, and also that no obligation to pave can be spelled out of the agreement to repair, is supported in Chicago v. Sheldon, 9 Wall. 50, 19 L. ed. 594. It is also appreciated that the learned trial court's construction of section 6 creates difficulties in application. For whenever a street, upon which defendant runs its street railway, is paved for a less width than from

sidewalk to sidewalk, dispute is likely to arise as to what portion defendant is liable to pay for. And it would seem also to effect an undesirable difference in the burden of paving as between those whose property fronts upon a street paved its whole width and those fronting on streets paved a less width, as in the instant case. The question presented by the appeal is doubtful and perplexing; we are, however, not persuaded that the court below arrived at a wrong conclusion.

Order affirmed.