COAST-LINE R. Co. v. MAYOR AND ALDERMEN OF THE CITY OF SAVANNAH.

(*Circuit Court, S. D. Georgia, E. D.* February 8, 1887.)

1. STREET-RAILWAY COMPANIES—AGREEMENT AS TO PAVING STREETS—CONTRACT.
   A city ordinance, authorizing the construction of a street railway, containing, with many other mutual stipulations, this clause, "in the event of the paving by the city of the whole or any portion of the street used by said railway company, the portion of the track between the rails shall be paved and kept in good order and thorough repair by the company at its own expense and cost," which stipulations are assented to by the railway company, and the railway constructed thereunder, is a contract between the city and the railway company.

2. SAME—EXTENSION OF DUTY TO PAVE—CONSTITUTIONAL LAW—CODE GA. § 1682.
   An act of the legislature of the state made thereafter, authorizing the mayor and aldermen of the city to compel the railway company to pave, not only between its tracks, but three feet on each side of the track, impairs the obligation of the contract. The Code of Georgia (section 1682) reserves to the state the right to withdraw the franchise of the railway company, and that reservation places under legislative control all rights, privileges, and immu-

nities derived by its charter directly from the state; but the state has no control over vested rights and interests. acquired by the company, and not constituting a part of the act of incorporation.[1]

3. SAME—OBLIGATION OF CONTRACTS.

Where the corporation has made contracts, valid under the laws of the state at the time they were made, the state cannot unmake them, or impose other or different terms on the corporation, to its injury, and for the benefit of the other contracting party.[1]

4. SAME—GEORGIA ACT OF SEPTEMBER 5, 1885.

The act of the general assembly of the state of Georgia, approved by the governor September 5, 1885, so far as it attempts to authorize the defendants to compel the complainants to pave three feet on each side of their track, is declared to be invalid and of no effect, as in violation of section 10, art. 1, of the constitution of the United States.

(*Syllabus by the Court.*)

In Equity.   Bill for injunction.   Demurrer.

*Jas. Atkins,* for complainant.

*H. C. Cunningham,* for respondent.

SPEER, J.   The duty to adjudge the questions presented by this argument is at once grave and delicate.   In their determination is comprehended the effect of the organic law upon the validity of a legislative act of the state.   The court has, it trusts, a clear and ample appreciation of the high and solemn duty imposed upon it by the constitution in cases of this character, and proceeds to its discharge not until it has carefully considered the forcible arguments of counsel, and as carefully examined every authority cited, and the opinion of every text-writer to which reference has been made.

The Coast-Line Railroad Company was chartered by an act of the legislature of Georgia, October 10, 1868, which was amended August 20, 1872.   Its corporators were authorized "to construct a railroad from such point, in the city of Savannah, as may be authorized by the mayor and aldermen, to any point or points on Wilmington island."   Acts Gen. Assem. Ga. 1868, p. 115.   Thereafter the mayor and aldermen designated the initial point in the city of Savannah, viz., the intersection of West Broad and Broughton streets.   On September 28, 1873, the city adopted an ordinance, indicating the route for the railroad from the initial point "along the center of Broughton street," etc., with many terms and conditions to be complied with by the company, and others by the city. The clause concerning which the present controversy has arisen is in the following language:

"In the event of the paving by the city of the whole or any portion of the streets used by said railroad company, the portion of the track between the rails shall be paved and kept in good order and thorough repair by the company, at its own expense and cost."   Rebarrer's Digest of City Laws, p. 154.

---

[1] A law imposing penalties on certain corporations is unconstitutional as to those holding antecedent charters.   Tripp v. Pontiac, etc., Co., (Mich.) 32 N. W. Rep. 907. Respecting the application of the constitutional inhibition of laws violating the obligations of contract see Com v. Jones, (Va.) 1 S. E. Rep. 84, and note; Willis v. Miller, 29 Fed. Rep. 238; Saginaw Gas-Light Co. v. City of Saginaw, 28 Fed. Rep. 529, and note.

The company accepted the terms tendered by the ordinance, and constructed, and since that time has operated, the railroad in accordance therewith. It is an ordinary surface street railway.

On September 5, 1875, the legislature of Georgia authorized the mayor and aldermen of the city of Savannah to pave the streets of the city, with the power to assess two-thirds of the cost on the real estate abutting on the streets improved; and in section 2 of the act provided further that any street-railroad company, having tracks running through the streets of said city, shall be required to macadamize or otherwise pave, as the said mayor and aldermen of the city of Savannah may direct, the width of its tracks, and "*three feet on each side of every line of track now in use, or that may hereafter be constructed by such company.*"

On the seventeenth and twenty-fourth days of March, 1886, the city having determined to pave Broughton street with asphaltum, directed the railroad company to pave, not only between the rails of the track, but for three feet on each side of the rails, and the company refusing to pave otherwise than between the tracks, the city laid the additional pavement, and, on the seventeenth day of December, 1886, under the provisions of section 5 of the paving act of September 5, 1885, summarily issued an execution, which has been levied on the road-bed, right of way, and superstructure of the railroad lying between Abercorn and West Broad streets, and has advertised it for sale to collect the sum of $3,685.50, expended by the city in the construction of that portion of the pavement in controversy. The company, on December 3, 1886, filed in this court their bill, averring the foregoing facts, and charge that the act of the legislature of September 5, 1885, and the ordinances of the city passed thereunder, are in violation of section 10, art. 1, of the constitution of the United States, which provides that "no state shall pass any bill of attainder, *ex post facto* law, or law impairing the obligation of contracts," and they pray that the act be declared invalid, and that the city authorities be enjoined from proceeding with the levy and sale. To this bill the city has filed a general demurrer, upon the argument of which this decision is made. It is insisted by the city that the act of September 5, 1885, is authorized by the reservation by the state of the power to withdraw the franchise of a private corporation, unless such right is expressly negatived in the charter. Code Ga. § 1682.

While other questions were mentioned in the argument, it is evident that the true test of the validity of the act is to be found in the determination of these questions: (1) Is the ordinance of September 29, 1873, a contract? (2) If a contract, does the act of September 5, 1885, impair the obligation of the contract? (3) If it does, is such impairment authorized by section 1682 of the Code of Georgia, empowering the legislature to withdraw the franchise of a private corporation, considered with the constitutional inhibition to the state relative to enactments impairing the obligations of contracts?

*First.* That the ordinance of the city, authorizing the construction of the railroad, is a contract between the two corporations, in the opinion of the court, is scarcely susceptible of doubt. Had permission been given by

the city simply to build the road, without consideration, and had the company in good faith built it accordingly, it would have been a contract, more properly perhaps a grant, which, in legal effect, Mr. Justice Blackstone tells us, "differs in nothing from a contract." A grant, in its own nature, amounts to an extinguishment of the right of the grantor, and implies a contract not to reassert that right. A party is always estopped by his own grant. *Fletcher* v. *Peck*, 6 Cranch, 87–136. But this contract was made with full consideration. Its stipulations were mutual and valuable. It is quite clear that the city desired the railroad as decidedly as the company desired the privilege to build it. If permission was granted by the ordinance to construct the railroad, it was stipulated that corresponding benefits should accrue to the city. And, indeed, so desirable to the city was the railroad, that the company was given an exemption from taxation for four years; and yet it is not necessary to the validity of the contract that the consideration should be a benefit to the grantor. It is sufficient that it import damage or loss, or forbearance of benefit, or any act done or to be done on the part of the grantee. Opinion of Mr. Justice Story, *Dartmouth College Case*, 4 Wheat. 684.

*Secondly.* It is equally undeniable that the act of September 5, 1885, impairs the obligation of the contract. The obligation of a contract consists of its binding force on the party who makes it. Cooley, Const. Lim. 285. The city of Savannah and the railroad company, by virtue of their respective charters, had the power to contract, and they did contract. They contracted in these words:

"In the event of the paving by the city of the whole or any portion of the streets used by said railroad company, the portion of the track between the rails shall be paved and kept in good and thorough repair by the company, at its own expense and cost."

This was the limit of the paving to be done by the company. "*Expressio unius est exclusio alterius.*" This maxim is never more applicable than when applied to the interpretation of a statute. In construing this contract, it is the necessary presumption that the railroad company agreed, in consideration of the privileges granted it by the city, to pave between its tracks, and no more; and this obligation is as binding on the city as it is on the company. Therefore a subsequent act of the legislature, requiring it to pave a lateral addition of six feet, bears on the contract to the advantage of the city, and to the injury of the company, and "impairs the obligation."

It remains to be determined whether the act of the state legislature, and the city ordinance in pursuance thereof, are valid. Fortunately for the proper adjudication of this most interesting question, the reports of the highest appellate tribunal of our country, a tribunal at once renowned for the majesty of its jurisdiction, the enlarged and splendid comprehensiveness of its knowledge, and the perspicuous lucidness of statement with which its decisions are pronounced, abound in cases upon the provision of the constitution by which the validity of this act must be tested. The power of the state to repeal, suspend, alter, or

modify a charter is fully conceded in repeated decisions. Every possible presumption is in favor of the validity of the statute, and this continues until the contrary is shown beyond a rational doubt. One branch of the government cannot encroach on the domain of another without danger; but neither the state nor the United States can interfere with private rights, except for legitimate governmental purposes; and it is not legitimate for any purpose for a state to pass any law impairing the obligation of a contract. The reservation of the state to withdraw the franchise of this railroad cannot be disputed, and that reservation affects the entire relation between the state and the corporation, and places under legislative control all rights, privileges, and immunities "derived by its charter directly from the state." *Tomlinson* v. *Jessup*, 15 Wall. 458. But rights and interests acquired by the company, not constituting a part of the contract of incorporation, stand upon a different footing. *Railroad Co.* v. *Maine*, 96 U. S. 511. It is competent for the state, in the exercise of its reserved power, (Code, 1682,) to alter the act incorporating the company in all particulars constituting the grant to it of corporate rights, privileges, and immunities. These flow from the state, and should properly be kept under its control. But where the corporation has, by contract or otherwise, acquired vested rights, it is not competent for the legislature to take them away. The state cannot undo what has already been done. It cannot unmake contracts that have already been made. All such rights of the corporation legally acquired are equally beyond legislative interferences. *Miller* v. *State*, 15 Wall. 478; *Com.* v. *Essex Co.*, 13 Gray, 239; *Holyoke Co.* v. *Lyman*, 15 Wall. 500; *Sinking Fund Cases*, 99 U. S. 700.

The case of *Chicago* v. *Sheldon*, 9 Wall. 50, is a case very much in point. It was the case of a street railway seeking to enjoin the collection of an assessment against the company for curbing, grading, and paving. The common council had passed an ordinance, by which they granted to the company permission to lay, for 25 years, a single or double track of railway, upon certain conditions, very like the conditions in the contract now before the court. It embraces the following clause, (the seventh section:)

"The said company shall, as respects the grading, paving, macadamizing, filling, or planking the streets, or parts of the streets, upon which they shall construct their said railways, or any of them, keep eight feet in width along the line of said railway, on all the streets wherever one track is constructed, and sixteen feet in width along the line of said railway where two tracks are constructed, in good repair and condition during all the time to which the privileges hereby granted to said company shall extend, in accordance with whatever order or regulation respecting the ordinary repairs thereof may be adopted by the common council of said city."

It appears from the statement of facts in that case that, after this contract was made, and carried into execution by the railway company, and up to the year 1866, the common council passed several ordinances for curbing them with curbstone, grading and paving them with wooden blocks, known as the Nicholson pavement. Under none of these, how-

ever, was the railway property of the street railway corporation assessed, except under one passed in the year last named. At that time a special tax or assessment of $28,677 was imposed upon the property of the railway company, and the collection being threatened, one Sheldon, a large stockholder in the company,—the company itself having declined to act,—filed a bill in the circuit court to enjoin the collection, and the court enjoined it accordingly. From that decree the city of Chicago carried the case to the supreme court; the main question being whether, under their contract to keep the road for a certain number of feet "in good condition and repair," the company could be made to pay for what was a new curbing, grading, and paving altogether." The following extract is from the opinion of the court, delivered by Mr. Justice NELSON:

"It is asserted, on the part of the railway company, that, by the true construction of their contract, they are exempt from the assessment made upon their property; and the seventh section of the ordinance of May 23, 1859, is referred to and relied on in support of this construction. That section prescribes the obligations and duties of the company, in respect to the condition and repairs of the streets during the whole period of the running of the contract, and imposes certain burdens upon it as to repairs, from which, to their extent, the city or adjoining owners of lots are relieved. It is insisted that this provision was intended, and so understood by both parties, as regulating the whole subject as respects improvements of the streets occupied by the company, and to fix in the contract the extent of their liability. The language of it is somewhat peculiar, and it cannot be well denied but that a fair and reasonable interpretation favors this view. It is as follows: ' The said company shall, as respects the grading, paving, macadamizing, filling, or planking of the streets, or parts of the streets, upon which they shall construct their said railways, or any of them, keep eight feet in width along the line of said railway on all the streets where one track is constructed, and sixteen feet in width along the line of said railway where two tracks are constructed, in good repair and condition.' Now, it is quite clear that the above recitals embrace the whole subject of improvements of the streets, and that it was present to the minds of the parties when entering into the stipulation respecting repairs that followed. And this being so, it is difficult to deny but that these stipulations were made as fixing the proportion or share of these general improvements which should be imposed on the company, namely: They should keep in condition and repair eight or sixteen feet, as they used a single or double track, along the entire length of the road. They were not to grade, pave, macadamize, fill, or plank even the above width or distance, except so far as such work came within the category of repairs. * * * A contract having been entered into between the parties, valid at the time by the laws of the state, it is not competent even for its legislature to pass an act impairing its obligation; much less could any decision of its courts have that effect. A point is made that the legislature have not conferred, or intended to confer, authority upon the city to make this contract. We need only say that full power was not only conferred, but that the contract itself has been since ratified, by this body."

There can be no difference in principle between this case, the authority of which is controlling in this court, and the case in hand. Here, as there, the clause in the contract, restricting the obligation of the railway company on the subject of the improvement of streets, "embraced the whole subject," and the share or proportion to be borne by the com-

pany is fixed by that clause. The agreement was "valid at the time by the laws of the state," and it is not competent, say the supreme court, "even for the legislature to pass an act impairing the obligation." Much stress was laid upon the authority of the railroad tax cases from Georgia, where the power of the legislature to place additional taxation upon certain railroads was sustained by the supreme court of the United States. But the whole subject of taxation is one peculiarly belonging to the sovereignty of the states. The exemption from taxation can be withdrawn by the legislature at any time. That is a question between the legislature and railroad company. Here, however, the state seeks to revoke a contract made by the company with the city of Savannah. *Railroad Co.* v. *Maine,* 96 U. S. 499, before cited, in principle identical with the railroad cases from Georgia, denies this power.

This entire subject is exhaustively considered in Mor. Priv. Corp. par. 463 *et seq.*, and the authorities there cited, will, I think, fully bear out the conclusions here reached. Upon a review of every authority cited by counsel for defendant to support the interference of the legislature, it will be found that each case depends upon special circumstances, in view of which the sovereignty of the state can be properly exercised. But there is no warrant found for an act which deliberately revokes a valid contract between a private corporation and a third party, where rights have become vested. This the act of September 5, 1885, seeks to do, and it is for that reason held invalid, so far as it attempts to authorize the mayor and aldermen of the city of Savannah to compel the complainants to pave three feet on each side of their track, or otherwise than is stipulated in the ordinance of September 29, 1873, expressing the contract between the city and the Coast-Line Railway Company. I hold, therefore, that the complainants, upon the allegations of their bill, are entitled to the injunction they seek, and the demurrer is overruled.