JAMES B. DEAN v. THE MAYOR AND ALDERMEN OF THE
CITY OF PATERSON.

Argued June 5, 1901—Decided November 11, 1901.

1. A street railway, exercising its franchise within a city street, al-
though having a property in its ties, rails and other necessary
equipment, is not liable to be assessed for benefits of a street im-
provement made by the city, under the act of June 13th, 1898
(*Pamph. L., p.* 466), which directs the assessment to be made in
proportion to the benefits acquired by lands and real estate border-
ing on such street.

2. Under the provisions of an ordinance requiring a street railway to
keep and maintain the portion of a street inside its rails and for
two feet outside of them in good and sufficient repair, the company
is not bound to repave within those limits with a new and different
material selected by the city, nor is it liable to the expense of such
repaving when laid down by the city.

3. Where the report of the commissioners making such assessments
for benefits is in regular and proper form, the fact that the schedule
annexed thereto shows the assessment for pavement and curb in
separate columns, with the total carried out opposite, will not in-
validate the assessment.

On *certiorari.*

Before Justices GUMMERE and HENDRICKSON.

For the prosecutor, *Francis Scott* and *Edward F. Merrey.*

For the defendant, *Michael Dunn.*

The opinion of the court was delivered by

HENDRICKSON, J. The prosecutor is the owner of several
lots of land bordering on Broadway, one of the streets of the
city of Paterson, which have been assessed for alleged benefits
arising from the repaving of a portion of the street, pursuant
to the act of June 13th, 1898 (*Pamph. L., p.* 466), and the
supplements thereto. He challenges the validity of the assess-
ment on several grounds. The first of these to which I will
call attention is that the commissioners failed to assess benefits

against the Paterson Railway Company, a corporation engaged in operating, by electric power, a double track street railway upon the street in question. While the ties, rails and other equipment of a street railway may partake of the nature of real estate, and be liable to general taxation as such, and may be benefited by a street improvement like this, still whether it is liable to assessment for such benefits must depend upon the fair meaning of the governing statute. We think it is clear that, under the statute above referred to, an assessment upon a street railway for the benefits would be without authority.

The statute, in defining the mode and manner of the assessments, says they "shall, in each case, be in proportion, as near as may be, to an amount as will be equal to the amount of benefits actually acquired by the lands and real estate bordering on any street or highway or portion thereof so improved by reason of such improvement." In other parts of the statute the property to be thus reached is described as "the lots or parcels of land and real estate." From this language we think it is clear that the assessments for benefits are confined to the abutting owners upon the street thus improved. This view is sustained by the authorities. *Davis* v. *Newark,* 25 *Vroom* 144; *King* v. *Duryea,* 16 *Id.* 258; 2 *Ell. R. R.* 787; *O'Reilly* v. *Kingston,* 114 *N. Y.* 439; *St. Paul City Railway Co.* v. *Ramsey County District Court,* 31 *Minn.* 354; *Railway Co.* v. *Winnebago County,* 89 *Wis.* 435; *Davidson* v. *Gilon,* 126 *N. Y.* 147.

Another ground urged is that the street railway was under a duty to pave inside the rails of its tracks and for two feet outside, according to the provisions of the ordinance conferring its franchise, and that the property owners should only have been assessed for benefits accruing from the remaining portion of the street.

The ordinance in question expresses the duty of the company with regard to the surface of streets to be occupied by it in these words: It "shall keep and maintain so much of the streets or avenues as are inside of and for at least two feet adjoining the outside of said rails in good and sufficient repair," &c.

There was evidence tending to show that, after the railway

tracks were laid, the city paved the street in question with macadam, which had become worn and out of repair, particularly in that part about three feet out from the railway track. The repaving was done with red brick, laid in concrete, and was recognized as an improvement of a permanent and substantial character.

We think this ground of the prosecutor cannot be maintained. To do so we must give a meaning to the word "repair" which does not ordinarily attach to it, and we would have to depart from the line of legal precedent.

In the leading case of *Chicago* v. *Sheldon,* 9 *Wall.* 50, it was held that a stipulation on the part of the street railway company to keep the street in constant good order and repair did not require it to pay a proportion of the expense of paving. And generally it is held that an obligation to repair a street is not an obligation to construct thereon a new pavement., *District of Columbia* v. *Clephane,* 4 *Am. & Eng. R. R. Cas.* 341; *Farrar* v. *St. Louis,* 80 *Mo.* 379; *Philadelphia* v. *Hestonville M. & F. Railroad Co.,* 177 *Pa. St.* 371; *Philadelphia* v. *Philadelphia City Passenger Railroad Co.,* 35 *Atl. Rep.* 720; *Binghamton* v. *Railway Co.,* 61 *Hun* 479; 23 *Am. & Eng. Encycl. L.* 989 and *note* 1.

Another objection urged against the assessment is that the commissioners have, in the schedule attached to their report, divided the amounts of total benefits assessed against the owners into two parts—one for the pavement and the other for the curb. It is argued from this that the assessments were made with reference to the cost of the work, and not to the benefit derived from the improvement. But the report distinctly states that the assessments so made · are for special benefits acquired by the improvement, and that in no case are they beyond the amount of special benefits derived from the permanent improvement of the street. The evidence taken supports the report in this particular, and shows that part of the expense of the curbing was assessed upon the city at large. We are unable to say that the action of the commissioners in this respect is in violation of any legal principle, and hence we cannot interfere.

The objection that the price for curbing was fixed by the city, in the contract for the improvement, and that in this particular the work was not submitted to competitive bidding, as required by the statute, cannot avail. It appears that all the other work was so submitted, but that a maximum price was fixed for the curbing, and was part of the contract and specifications upon which bids were invited. This objection, coming, as it does, after the prosecutor, with notice of the improvement, allowed the work to be completed without objection, cannot now be entertained. *State, &c.,* v. *Paterson,* 11 *Vroom* 244; *Provident Institution* v. *Jersey City,* 23 *Id.* 490; *State* v. *Paterson,* 7 *Id.* 159; *State* v. *Morristown,* 5 *Id.* 445.

The other reasons were not pressed at the argument, and not finding in them any valid ground for interference with the assessment, the same is affirmed, and the *certiorari* will be dismissed.