[No. 13283.   Department Two.   June 16, 1916.]

THE STATE OF WASHINGTON, *on the Relation of the City of Olympia et al., Respondents*, v. OLYMPIA LIGHT & POWER COMPANY, *Appellant*.[1]

STREET RAILROADS—FRANCHISE—ALTERATION.  Laws 1889-90, p. 183, § 117, giving municipal corporations power to grant franchises for the use of their streets confers no authority for the alteration of such franchises subsequent to their grant so as to impose additional obligations on the holder in the matter of street paving differing from the conditions of the franchise contract.

STREET RAILROADS — POLICE POWER — STREET PAVING.  The police power authorizing a municipality to require a street railway company to keep its tracks in safe condition for the public welfare cannot be extended so as to require the company at its own expense to pave with other material than that laid by it under its franchise contract.

STREET RAILROADS — PAVING — MUNICIPAL POWERS.  Cities of the third class are without delegated power, in the absence of express statute, to require railway companies that have constructed their tracks and are operating cars thereon to pave or improve any part of the street on which they are laid.

STREET RAILROADS—FRANCHISES — PAVING REQUIREMENTS.  Under ordinance No. 397 of the city of Olympia granting a franchise to a street railway company to lay its tracks in the city streets and plank within the rails and for eighteen inches outside the rails, with the option of adopting such pavement of a permanent character as the city may employ in paving the street, the city has no power to require the company to pave with other material than planking, notwithstanding a provision of the ordinance reserving to the city the right to amend or alter the franchise, "having due regard for the vested rights" of the grantee.

STREET RAILROADS—PAVING—CONSTRUCTION OF FRANCHISE.  Under an ordinance granting an extension of a street railway franchise over a portion of the street theretofore not included, and providing that the grantee "shall maintain such paving between the rails of the railway and to a distance of eighteen inches on each side of the same as shall be used by the city in the paving of Fourth street along the line of this road," the term "maintenance" is to be construed as meaning "maintain after construction," in view of the fact that the ordinance further provides that the right of extension shall be subject to the terms of the original franchise wherein it

[1]Reported in 158 Pac. 85.

was provided that the city retained power to pave all streets over which the company might extend its lines, but all such work should be done so as to offer as little obstruction as possible to the operation of the railway.

Appeal from a judgment of the superior court for Thurston county, Mitchell, J., entered August 27, 1915, upon findings in favor of the plaintiffs, in an action for a writ of mandamus, tried to the court. Reversed.

*Troy & Sturdevant* and *A. J. Falknor*, for appellant.

*George R. Bigelow*, for respondent.

Holcomb, J.—In June, 1890, Olympia, a city of the third class, conferred upon appellant, a public service corporation, by ordinance No. 397, the right to construct, maintain, and operate a street railway upon certain streets, including that portion of Fourth street situated between Eastside street and Puget street. The life of this franchise was twenty-five years. The franchise was accepted by appellant, and later, on September 8, 1891, by ordinance No. 548, the original franchise was extended for a further period of twenty-five years, making the total life of the franchise fifty years. Section 2 of the franchise ordinance provides when the railway shall be begun and completed, and contains the following proviso:

"Nothing in this ordinance, nor any privileges granted thereby, shall be construed to prevent the municipal authorities from grading, paving, sewering, macadamizing, improving, altering or repairing or changing the grade of any of the streets, avenues, or thoroughfares over which the said company may extend its lines, but all such work shall be done so as to offer as little obstruction as possible to the operation of said railway, and the owner or owners of such railway shall, at their own expense, raise, lower, or change its tracks so as to avoid as much as possible the liability to obstruction during the progress of street repairs, improvements or alterations."

Section 6 of the ordinance is as follows:

"The owners or lessees of such railways shall plank that portion of the street occupied by them between the rails and

to a width of eighteen inches outside the rails, and shall keep such planking in good repair during the continuance of this franchise, and such planking shall be laid at the time of the construction of such railways."

Section 16 is as follows:

"The city of Olympia hereby reserves to itself the right to adopt and enforce all necessary ordinances to control the performance of the conditions of this charter, and also of amending, or in any manner altering this charter, having due regard for the vested rights of said Olympia Light & Power Company and its successors and assigns. It also reserves to itself the power to revoke this charter if any of the conditions hereof are not complied with."

On October 5, 1908, the city passed ordinance No. 990, which was accepted by appellant, amending § 6 of ordinance No. 397, to read as follows:

"The owners or lessees of such railways shall plank that portion of the street occupied by them between the rails and to a width of eighteen inches outside the rails, and shall keep such planking in good repair during the continuance of this franchise, and such planking shall be laid at the time of the construction of such railways. Provided, however, that the owners or lessees of such railways may at their option use such material between the rails for a distance of eighteen inches outside the rails as is used by the city in the construction of the street occupied by such railways, but if the material used by the city and adopted by the company under this provision is of a permanent character, such as wood-block, stone or asphalt, then and in that event the space outside the rails to be paved and maintained by the owners or lessees of such railways shall be twelve (12) inches instead of eighteen (18) inches as herein otherwise provided for. Provided, however, the said Olympia Light & Power Company shall within thirty days after being called upon so to do by the city council, elect whether it will pave with such permanent pavement or not, and such election shall be final, and any change to the location or grade of tracks permanently paved under the provisions of this ordinance shall be made at the expense of the city of Olympia."

In June, 1915, the city council attempted to pass ordinance No. 1384, which was regularly passed and published as required by law, but which was never accepted by appellant, and appellant has in no wise acquiesced in or consented to its passage. This ordinance purports to amend § 6 of ordinance No. 397 so as to read as follows:

"The owners or lessees of such railways shall improve and maintain the portion of the street occupied by their said car tracks between the rails and to a width of eighteen inches on the outside of the rails on both sides of said tracks with the same material used by the city of Olympia on the balance of the street along which and upon which said car tracks are laid, and whenever any street within the city of Olympia shall be improved, by paving, the owner or lessee hereunder shall forthwith pave the portion of the street occupied by its tracks between the rails and to a width of eighteen inches on the outside of the rails on both sides of said tracks with the same material used by the city on the balance of said street; the provisions of this ordinance shall apply to any street or portion thereof upon which the city of Olympia has heretofore caused paving to be laid, as well as upon streets or portions thereof where no paving has yet been laid; whenever it becomes necessary under the terms of this ordinance for the owner, grantee or lessee hereunder to pave its said tracks, the city council of the city of Olympia shall notify it so to do by resolution, directing said owner, or grantee or lessee hereunder to forthwith and within twenty (20) days from the passage of said resolution to commence to pave its said tracks in the same manner as the balance of said street along which said tracks extend shall be paved."

In June, 1915, the city council passed an ordinance for the improvement by paving of Fourth street from Eastside to the east city limits, which would include all that portion of Fourth street between Eastside street and Central street occupied by appellant's tracks. This ordinance provides for the paving with asphaltic concrete of all that portion of Fourth street except that portion occupied by the tracks of the appellant, and to a width of eighteen inches on the outside of the rails on both sides of the street car tracks of ap-

pellant.   On July 7, 1915, the city council passed resolution M-46, notifying appellant to begin the paving of its tracks with asphaltic concrete on a concrete foundation and for a distance of eighteen inches on each side thereof.   By virtue of the amendment to the franchise ordinance of June, 1915, and the resolution above referred to, the city claims a right to require appellant to pave with the same material used by the city, and commenced this action in the superior court to compel by mandamus such performance by appellant.

Fourth street, prior to this time, had never been paved, but had been maintained as a dirt and gravel street.   It is a public street, running east and west, and is one of the main thoroughfares of the city of Olympia.   Eastside street intersects Fourth at right angles.   Puget street intersects Fourth one block east of Eastside street.   Central street intersects Fourth street four blocks east of Puget.

The difference in the situation, as regards the controversy between these parties as to paving Fourth street from Eastside street to Puget street and paving from Puget street to Central street, arises from the fact that the appellant constructed its railway and exercised its franchise first only to Puget street under ordinance No. 397.   On May 2, 1904, the city passed ordinance No. 816, granting to appellant the right to extend its street railway from Puget street easterly on Fourth street to the city limits.   Section 2 of that ordinance, extending the privilege to construct and operate the railway from Puget street to Central street, is as follows:

"The construction of the railway, the franchise for which is hereby granted, shall be commenced within 60 days from the date of the approval of this ordinance, shall be prosecuted without unnecessary delay and completed within 120 days from the date of the approval hereof.   Provided, however, that if said railway shall be completed east of Fourth street to Central street within the time herein specified, the time for the completion of the remainder of the road shall be extended one year from date hereof."

Section 3 reads:

"The said Olympia Light & Power Company, its successors and assigns, shall maintain such paving between the rails of said railway and to a distance of eighteen inches on each side of same, as shall be used by the city in the paving of said Fourth street along the line of this road. But should said street be not planked or otherwise paved, then said company may construct such road of gravel and maintain same in a proper and passable condition, and shall plank same at each street intersection if required by the council."

As to this portion of the paving sought to be required by the charter, it is contended that the relator has a right to require appellant to construct pavement of the same material as that used by the city whenever used by the city, as well as to maintain such pavement under the provisions of § 3 requiring appellant to maintain such paving between the rails of the railway and to a distance of eighteen inches each side of same. Appellant, on the other hand, claims that, under this ordinance, it is not required to construct the original pavement, but is only required to maintain such pavement after it is constructed by the city.

Respondent asserts, (1) that the city has independent authority to compel appellant to pave; (2) that the amendatory ordinance No. 1384 does not impair any existing contract, and (3) that the city can require paving to be done under its police power.

The statute of 1890 relating to the powers of municipal corporations, pages 183, 184, provided that the city council should have power to grant such a franchise for the use of the streets of the municipality and to include therein such restrictions as the city council may deem proper. Under such statutory power, undoubtedly the city could enter into a binding contract with the grantee of a franchise to bind both parties to the conditions, and, under the franchise ordinance in question, it would seem that the city council sought to make such restrictions as were then thought to be proper and necessary. If it had such power, undoubtedly the agree-

ment was binding on both parties. *Walla Walla v. Walla Walla Water Co.*, 172 U. S. 1; *Southern Pac. Co. v. Portland*, 227 U. S. 559.

The ordinance granting the franchise shows that it had in contemplation the amount and character of paving to be constructed in the future and to be maintained by the franchise holder. By § 2 of the franchise ordinance it was provided that the city should have the right to grade, pave, sewer, macadamize, improve, alter, repair, or change the grade of any of the streets occupied by appellant, but such work to be done so as to offer as little obstruction as possible to the operation of the railway, and that the owners of the railway should, at their own expense, raise, lower or change tracks so as to conform to such improvement and so as to avoid as much as possible the liability of obstruction during the progress of street repairs or alterations. Section 6 of the ordinance provided that the owners or lessees of the railway should plank that portion of the street occupied by the railway between the rails and to a depth of eighteen inches outside of the rails, and keep such planking in good repair during the continuance of the franchise. Later, and with the consent of the appellant, § 6 was amended, giving appellant the option of planking between the rails and for eighteen inches outside, as it was required to do originally, or of paving between the rails a foot on each side of the rails with such pavement as was used by the city when it paved the remainder of the street. It would seem that these provisions were intended to cover the entire subject of paving, and that the city did not contemplate any additional burden should be borne by the railway company.

"A subsequent ordinance requiring additional paving impairs the obligation of the contract and is not such an exercise of the police power as will be upheld. So a city ordinance which contains by agreement as to its stipulations a contract by the city with a street railway company to pave certain portions of the street cannot be thereafter so altered

by the legislature as to impose additional obligations upon the company in the matter of paving, even though the code of the state reserves to it the power to control the company's rights, privileges and immunities and to withdraw the franchise." Joyce, Franchises, § 337.

This text is supported by a large number of authorities, particularly from Alabama, Connecticut, Illinois, Iowa, Louisiana, Massachusetts, Michigan, Nebraska, New York, New Jersey, Ohio, Pennsylvania, Texas, Wisconsin, and the supreme court of the United States. Cases to the contrary are cited by respondent. In a Wisconsin case, *Madison v. Southern Wisconsin R. Co.*, 156 Wis. 352, 146 N. W. 492, a street railway company organized long prior thereto had, up to 1892, operated under a franchise requiring it to pave or macadamize any street upon which it should be located, between the rails and for one foot on each side of the rails on the outside of the rails, and to make and keep the track between and one foot on the outside of the rails as good as the street shall be outside of their tracks, and to correspond in surface and improvements with the street outside the track. The franchise was in existence when the paving in question was done, unless repealed by a franchise granted the railway company in 1892, under which it was operating when the work was done. The new franchise was complete and so framed as to cover all features of street railway construction, maintenance, and operation. It was granted to authorize displacement of the old horse-car system by a general electric system, and contained a general repealing clause. The new franchise in general was worded the same as the old one, with such changes as made it adaptable to electricity. The provision with reference to paving between the rails, from the old franchise before mentioned, was not, however, carried into the new franchise. The court accordingly held that a subsequent ordinance requiring the street between the rails to be paved with the same material as was the rest of the street was not an impairment of its franchise contract.

In *State ex rel. Milwaukee v. Milwaukee Elec. R. & Light Co.*, 157 Wis. 121, 147 N. W. 232, it was held that, in case of doubt as to the nature of a provision imposing a duty upon a street railway company under a franchise ordinance enacted pursuant to statute, it is to be construed as a regulation rather than a contract. In that case it appears that there was a statute already in force at the time the franchise was granted for the use of the street for street railway purposes, providing that "every such road shall . . . be subject to such reasonable rules and regulations . . . as the proper municipal authorities may by ordinance, from time to time, prescribe," and that such a statute affected the construction of an ordinance enacted pursuant thereto to the same extent as if it were expressly written into the ordinance. It was further held in that case that, in regulating the repair and improvement of its streets, a city exercises a legislative function, and it cannot, without express authority from the legislature to do so, contract away its legislative power. It follows, we think, that, in the absence in this state at the time of the granting of the franchise to appellant of such a statute as was relied upon in the Wisconsin case last cited, that case is not in point. It may be noted that there was a vigorous dissenting opinion by three of the judges of the supreme court of Wisconsin to the holding in that case.

The Michigan case of *Detroit v. Detroit United Ry.*, 172 Mich. 496, 138 N. W. 215, is cited by respondent to support its contention. It was there held that it must be a very plain provision, indeed, in a contract which would justify the courts in holding that the power to regulate the paving and kind of paving to be used by a street railway in the portion of a street occupied by it was surrendered; where doubt exists such contracts will be construed against the surrender of such power. In our case, however, the contract is plain, definite, and unequivocal, and the statutory power is equally positive. As was said in *State ex rel. Webster v. Superior*

*Court,* 67 Wash. 37, 120 Pac. 861, Ann. Cas. 1913 D. 78,
L. R. A. 1915C 287, quoting from *Home Telephone Co. v.
Los Angeles,* 211 U. S. 265:

" 'It has been settled by this court that the state may au-
thorize one of its municipal corporations to establish by an
inviolable contract the rates to be charged by a public serv-
ice corporation (or natural person) for a definite term, not
grossly unreasonable in point of time, and that the effect of
such a contract is to suspend, during the life of the contract,
the governmental power of fixing and regulating the rates.
*Detroit v. Detroit Citizens' St. Ry. Co.,* 184 U. S. 368, 382;
*Vicksburg v. Vicksburg Water Works Co.,* 206 U. S. 496,
508.   But for the very reason that such a contract has the
effect of extinguishing *pro tanto* an undoubted power of gov-
ernment, both its existence and the authority to make it must
clearly and unmistakably appear, and all doubts must be
resolved in favor of the continuance of the power.' "

If the rule above announced applies to the matter of fixing
rates between a municipality and a public service concern, it
certainly would apply to the matter of constructing and
maintaining pavement by a public service concern.   A num-
ber of cases cited by respondent have to do with franchise or-
dinances where reservations were expressly made by the
grantor to enable it to amend, alter, or change the nature
of the franchise or rights holden thereunder at any time dur-
ing the life of the franchise.   There is no such reservation in
question here.   It is true that § 16 of the franchise ordi-
nance expressed a reservation, but only to the following ef-
fect: that the city of Olympia reserved the right to adopt and
enforce all necessary ordinances "to control the performance
of the conditions of the charter, and also of amending, or in
any manner altering this charter, *having due regard for the
vested rights of said Olympia Light & Power Company, and
its successors and assigns.*"   It also reserved to itself the
power to revoke the franchise if any of the conditions thereof
were not complied with.   Now, the appellant accepted the
franchise and complied therewith by constructing the kind of

pavement where the street was paved that the city then 're-
quired. It is bound by its franchise so to do. It is not
bound by its franchise, and in fact the city contracted with
it that it should not be bound, to do anything further.

The very early and leading case in point upon the matter
is that of *Chicago v. Sheldon,* 9 Wall. (U. S.) 50. In that
case it appeared that, in May, 1859, the city of Chicago con-
ferred upon a street railway company the right to construct
a railway, which franchise was accepted and acted upon,
which provided, among other things, that the company "as
respects the grading, paving, macadamizing, filling, or plank-
ing of the streets, or parts of the streets, upon which they
shall construct their said railways, or any of them, shall keep
eight feet in width along the line of said railway on all the
streets wherever one track is constructed, and sixteen feet in
width upon the line of said railway where two tracks are con-
structed, in good repair and condition during all the time to
which the privileges hereby granted to said company shall ex-
tend, in accordance with whatever order or regulation respect-
ing the ordinary repairs thereof may be adopted by the com-
mon council of said city." It was held by the supreme court
of the United States that a contract having been entered into
between the parties, valid at the time by the laws of the state,
no decision of the courts of the state subsequently made can
impair its obligation, and that the provisions above quoted
did not make the company liable for curbing, grading, and
paving the streets with an entirely new pavement. The obli-
gation of the company extended to repairs only.

*Sioux City St. R. Co. v. Sioux City,* 138 U. S. 98, a case
cited and relied on very largely by respondent in its brief
and in argument as authority for the proposition that the
contract represented by the franchise is not binding, we do
not consider as in any way decisive in this case, for the rea-
son that there, as in the Wisconsin cases heretofore discussed,
there was a provision of the Iowa code that the charter of
the street railway company should at all times be subject to

legislative control and might at any time be altered, abridged, or set aside by law, and that the franchise might be regulated, withheld, or subject to restrictions upon the enjoyment thereof. This provision was in force at the time of the granting of the franchise by ordinance of Sioux City which required the railway company to pave the street between the rails. The legislature, subsequent to the ordinance, passed a law requiring railway companies in such cities to pave one foot outside of the rails, and the city thereupon enacted the ordinance considered in the case cited. It was there held that the reservation of power by the code that the franchise might be regulated, withheld, or subject to restrictions was a condition of the original grant, and that no contract was impaired where the company accepted its corporate power subject to such reservation. Other cases analogous and supporting the text as quoted from Joyce on Franchises, *supra,* which have been examined, are: *Coast-Line R. Co. v. City of Savannah,* 30 Fed. 646; *Parmelee v. City of Chicago,* 60 Ill. 267; *Billings v. Chicago,* 167 Ill. 337, 47 N. E. 731; *Western Paving & Supply Co. v. Citizens' St. R. Co.,* 128 Ind. 525, 26 N. E. 188, 28 N. E. 88, 25 Am. St. 462; *State ex rel. Kansas City v. Corrigan Consol. St. R. Co.,* 85 Mo. 263, 55 Am. Rep. 361; *State v. Mayor etc. of Paterson,* 37 N. J. L. 412, 50 Atl. 620; *Village of Madison v. Alton, G. & St. L. Traction Co.,* 235 Ill. 346, 85 N. E. 596; *City of Anna v. Northern,* 261 Ill. 538, 104 N. E. 171; *City of Moline v. Tri-City R. Co.,* 262 Ill. 122, 104 N. E. 271; *Enid City R. Co. v. City of Enid,* 43 Okl. 778, 144 Pac. 617; *Harris v. City of Macomb,* 213 Ill. 47, 72 N. E. 762; *Chicago, R. I. & P. R. Co. v. Chicago* (Ill.), 27 N. E. 926.

There can be no doubt that a municipality in this state can require a street railway company to keep its tracks in a reasonably safe condition for the public safety and welfare under the police power, but that is very different from requiring a street railway company, occupying its streets under a franchise contract definite and unambiguous in its

terms, to pave with certain material and in a certain manner, and afterwards, without its consent, to pave with other material and at its own expense.

There is no statute in this state giving to cities of the third class the power to require railway companies that have constructed their tracks and are operating their cars thereon to pave or improve any portion of the street. Without such delegated power, the city of Olympia has none. The statute of 1911, Laws 1911, p. 441 (3 Rem. & Bal. Code, § 7892-1 *et seq.*), provides the manner in which such cities shall proceed to improve the streets, and to provide for the payment thereof from the general fund or by special assessment against the property specially benefited. We have repeatedly held that street railways cannot be assessed for special improvements under statutes which provide that lots, tracts, and parcels of land and other property within such improvement district which shall be specially benefited by the improvement shall be especially assessed therefor, for the reason that the occupancy of such streets by such railways under franchise is not property but merely an easement. *Seattle v. Seattle Elec. Co.*, 48 Wash. 599, 94 Pac. 194, 15 L. R. A. (N. S.) 486; *In re Third, Fourth and Fifth Avenues*, 49 Wash. 109, 94 Pac. 1075, 95 Pac. 862; *In re Third Avenue*, 54 Wash. 460, 103 Pac. 807. Under the franchise here in question, we are agreed the respondent has no such power or right as it seeks to assert.

As to pavement of the railway between Puget street and Central street, which respondent contends can be required by reason of the ordinance of May 2, 1904, No. 816, heretofore mentioned, we do not think that the requirement therein to maintain such pavement as shall be constructed by the city is equivalent to a requirement to construct such pavement. There are cases cited by respondent as tending to support its view that "maintain" includes "construct," as *Hoar v. Hennessy*, 29 Mont. 253, 74 Pac. 452, where a statute provided that "Co-terminous owners are mutually bound

equally to maintain: (1) The boundaries and monuments between them. (2) The fences between them." The court held that the word "maintain" meant also "construct." But there, of course, could be but one reasonable construction of the word, for there could be no maintenance of fences on the lines without construction, and the owners were required jointly to maintain them.

In *Ex parte Cooks* (Tex. Cr.), 135 S. W. 139, where a statute provided that "the legislature may pass local laws for the maintenance of public roads and highways without the local notice required for special or local laws," the court held that the word "maintenance" included construction, laying out, and repairing, and was not used in its restricted sense. This also is a reasonable construction, for there could be no laws for the maintenance of public roads unless the public road were constructed. To the same effect is the case of *Dallas County v. Plowman*, 99 Tex. 509, 91 S. W. 221. This section of the ordinance in controversy must receive also a reasonable construction. It provides that the grantee of the franchise, its successors and assigns,

"shall maintain such paving between the rails of the railway and to a distance of eighteen inches on each side of same as shall be used by the city in the paving of Fourth street along the line of this road. But should said street be not planked or otherwise paved, then said company may construct such roadway of gravel and maintain same in a proper and passable condition and plank same at each street intersection if required by the council."

When the railway was constructed between Puget street and Central street, Fourth street was neither paved nor planked, and the company did as it was required to do by the ordinance, viz., constructed its roadway of gravel. The word "maintain" does not mean provide or construct, but means to keep up, to keep from change; to preserve; to hold or keep in any particular state or condition. Webster's Dictionary. In some instances it is synonymous with con-

struct, because it must be inclusive of construct in order to make it reasonable and effective.   But it is not in this instance.   Section 4, of ordinance No. 816, reads as follows:

"The right and franchise granted by this ordinance are granted with all rights and privileges and subject to all the requirements prescribed in ordinance No. 397, except so far as the provisions of this ordinance may conflict with same, in which case the provisions of this ordinance are to prevail."

It is thus seen that the city council made all of ordinance No. 397 not in conflict with ordinance No. 816 a part of the later ordinance, and it is necessary to again refer to ordinance No. 397.   Section 2 of that ordinance provided that nothing therein contained should be construed to prevent the municipality from paving in all the streets over which the company may extend its lines, but all such work should be done so as to offer as little obstruction as possible to the operation of the railway.   A reasonable construction, therefore, of the word "maintain," as contained in § 3 of ordinance No. 816, is that it does not mean construct and maintain, but simply maintain after construction.

The judgment is reversed, and the cause dismissed.

MAIN, BAUSMAN, and MOUNT, JJ., concur.