CITY OF KNOXVILLE *v.* KNOXVILLE POWER & LIGHT CO.

(*Nashville*, December Term, 1933.)

Opinion filed March 12, 1934.

FRANTZ, McCONNELL & SEYMOUR and W. H. PETERS, JR., all of Knoxville, for plaintiff.

CATES, SMITH & LONG, of Knoxville, for defendant.

MR. JUSTICE COOK delivered the opinion of the Court.

The city sued to recover $9,389.95, an apportionment of the cost of paving Euclid avenue in improvement district No. 126, and $2,602.74, an apportionment of the cost of paving University avenue in improvement district No. 116, and for paving a street in improvement district No. 30. The complainant insisted that the street railway was chargeable with the cost of paving between the tracks and a foot on both sides, under the common law, as well as under the Knoxville Local Improvement Law, chapter 348, Private Acts of 1925. The chancellor held that the duty was not imposed by the common law, and that the railway was not liable under the street improvement act for lack of notice, either actual or constructive. The Court of Appeals said the abutting property act of 1925 was not applicable, and refused to apply it, but held that by the common law the defendant was liable for the cost of paving the space between the tracks and a foot on each side, so as to make that space conform with the other portions of the street, and decreed a recovery against the railway. Both parties filed petitions for *certiorari*; the complainant insisting that the Court of Appeals erred in refusing to hold the defendant liable under the street improvement act as well as under the common law, and the defendant insisting that the Court of Appeals erred in holding that the common law imposed upon it the duty to bear any portion of the cost of making the street improvement. Both writs were granted, and the cause is here for review, upon *certiorari* to the Court of Appeals.

The railway tracks on Euclid and University avenues .are situated in and near the center of the street where they were located under franchises granted by the county court of Knox county before extension of the city limits. The franchises granted by the county court imposed no duty upon the railway to improve the space between the tracks. After these highways were included in the city limits, street improvement proceedings were inaugurated by the city council under the Knoxville Local Improvement Law, chapter 348, Private Acts of 1925, an act to provide for highway improvement by special assessments and general taxation. By section 2, highway develop-.nent is declared to embrace opening, widening, and extending highways, and highway improvement, to embrace grading and paving highways with the necessary drainage, sewer inlets, as well as curbs and gutters. The act also provides that the cost of improvement embraces, in addition to the cost of construction, damages for injury to property by change of grade, altering sidewalks, moving structures, establishing setback lines, and necessary expense for legal services.

Section 4 provides that the initial proceedings for a local improvement shall be by a resolution of the city council ordering the improvement, indicating the location, describing the character of the improvement by reference to material, and indicating the property within the district against which assessments are to be made for the cost of improvement.

Sections 5 and 6 provide that after passage of the resolution on first reading, the city engineer shall prepare plans and specifications and an estimate of the total cost, as well as an estimate of the amount to be assessed against each foot of abutting property, which shall be

filed with the recorder. After that is done the recorder is required to publish the date for hearings by the city council.

By section 11, after final passage of the improvement ordinance, the city engineer is required to file with the recorder a preliminary assessment roll showing: (a) A description of the lots and parcels of land within the district, which shall include all property declared by the council to be specially benefited, including a statement of the number of feet fronting upon the improvement. (b) A description of any railroad track or tracks. (c) The total cost of the improvement. (d) The portion of the cost which represents the share of railroads computed as hereinafter provided; and after subtracting such share of railroads, three-fourths of the remainder. (j) That proportion of cost chargeable to individual lots and parcels and to the city at intersections. (k) The amount chargeable upon each front foot of abutting property. A proportionate share accruing to frontage of three-fourths of the portion of that cost which remains after subtracting the share of railways. It will be noted that subsection (d) refers to subsequent provisions of the act for the method of computing the tax to be assessed against railways. The only subsequent provision of the act relating to railways is as follows:

"If there be any railroad track or tracks in any highway or intersection upon which a highway improvement is to be made hereunder, or if any franchise therefor shall have been granted and accepted, the cost of such improvement between tracks and between the rails of each track and to the distance beyond the rails as provided by existing laws or franchises shall be apportioned in such preliminary roll against such railroad, and any assess-

ment against such railroad shall constitute a lien upon all the franchises and property to the same extent as other assessments herein provided for are constituted liens upon abutting property; provided, however, that where any such railroad shall operate or be about to operate under any ordinance, contract or franchise which provides for the amount, manner and condition of the construction of said pavement or the payment of cost by such railroad, the foregoing provisions as to such railroad shall not be construed to affect or change the provisions of any such ordinances, contract or franchise.'' Section 12.

■■ On March 1, 1927, the city council passed a resolution providing for the improvement of University avenue in district 126 by laying a pavement of asphaltic concrete two inches thick upon a concrete base six inches thick, thirty feet wide, extending from curb to curb, and it was declared that ''the property against which special assessments'' for the cost shall be made is that designated as ''Improvement District 116.'' It was ordered that the assessment roll be prepared in accordance with the provision of section 11 of chapter 348, Private Acts of 1925.

The city engineer's estimate, required by the act, certified on March 3, 1927, fixed the total cost of the improvement at $8,973.80 and the estimated charge against each foot of abutting property at $4.01. On March 4, 1927, the recorder published notice of the local improvement in improvement district 116, and another notice on July 5, 1928, notifying property owners that the preliminary assessment roll was on file in his office. The resolution originally introduced was passed by the city council in conformity with provisions of the act and on July 17, 1928, was finally passed with another resolution

confirming the preliminary assessment roll, whereby the assessment became final.

In the final resolution it was declared: "The amounts assessed against each of the lots or parcels of ground in the preliminary assessment are less than the amount each of said lots or parcels of ground are specially benefited by the improvement and such amounts are in proportion to the special benefit the property received;" and further, "That the several assessments levied against the lots and parcels of ground in said preliminary assessment roll be and they are hereby declared to be a lien upon said lots or parcels as provided in the Knoxville Local Improvement Act."

It appears that on June 7, 1928, the city engineer filed with the recorder a statement of the amount of costs apportioned against the Knoxville Light & Power Company, but that was not done until after the contractors commenced the work of improving the street.

The proceedings outlined in the foregoing narrative are the same as in the other street improvement districts. Nothing in the resolution, nor preliminary estimate, contains a description of the railroad, or the suggestion of a purpose to charge the defendant with any portion of the cost of improving the street.

It does not otherwise appear from the record that the street railway company had notice, actual or constructive, that it would be affected by the proceeding under the street improvement act until after the city let the contract for making the improvement and after a greater portion of the work of improving the street had been done by the contractor.

It may be seen by reference to the proceedings of the city council that the assessment was directed against

abutting property. They contain no reference to the street railway or its tracks and suggest no purpose to assess it with any portion of the cost of the improvement. The assessment thus directed against abutting property alone could not include the railway's tracks situated in the street. *Koons* v. *Lucas,* 52 Iowa, 177, 3 N. W., 84; *O'Reilley* v. *Kingston,* 114 N. Y., 439, 21 N. E., 1004; *Ind. & V. R. Co.* v. *Capitol Paving & Const. Co.,* 24 Ind., 114, 54 N. E., 1076; *City of Maysville* v. *Maysville St. R. & Transfer Co.,* 128 Ky., 673, 108 S. W., 960; *Cleveland, C., C. & St. L. Ry. Co.* v. *O'Brien,* 24 Ind. App., 547, 57 N. E., 47.

We are therefore constrained to concur in the opinion of the chancellor that the defendant is not liable under the abutting property law because the act was not complied with in such way as to give it notice, either actual or constructive, that its property was to be assessed for any portion of the cost of improvement.

██ ██ As to the common law: An obligation attends the acceptance of a franchise and the construction under it of a railway upon public highways to properly repair and maintain the space occupied under the franchise. That obligation is an implied condition annexed to every grant authorizing a railway to occupy any portion of a public thoroughfare. Such is the common law stated in *Memphis, P. P. & B. Railway Co.* v. *State,* 87 Tenn., 746, 11 S. W., 946, and embodied in the statute. Shannon's Code, section 2403. It refers to and rests upon an impliedly assumed obligation. But this impliedly annexed obligation to maintain and keep in repair cannot be judicially enlarged or extended to impose an additional obligation to rebuild or improve the space along the tracks so as to bring it into conformity with municipal

ideals of street improvement or street reconstruction. *State ex rel.* v. *Olympia L. & P. Co.*, 91 Wash., 519, 158 P., 85; *State ex rel.* v. *Corrigan Consol. St. Ry. Co.*, 85 Mo., 263, 55 Am. Rep., 361; *Village of Madison* v. *Alton, G. & St. L. Traction Co.*, 235 Ill., 346, 85 N. E., 596; *Fielders* v. *North Jersey St. R. Co.*, 68 N. J. Law, 343, 53 A., 404, 54 A., 822, 59 L. R. A., 464, 96 Am. St. Rep., 552; *Western Paving & Supply Co.* v. *Citizens' St. Ry. Co.*, 128 Ind., 525, 26 N. E., 188, 28 N. E., 88, 10 L. R. A., 770, 25 Am. St. Rep., 462; *Chicago* v. *Sheldon*, 9 Wall., 50, 19 L. Ed., 594; *New Bern* v. *Atlantic & N. C. R. Co.*, 159 N. C., 542, 75 S. E., 807; *Wheeling Traction Co.* v. *Board of Commissioners* (C. C. A.), 248 F., 205; *Milwaukee El. Ry. & Light Co.* v. *Milwaukee*, 252 U. S., 100, 40 S. Ct., 306, 64 L. Ed., 476, 10 A. L. R., 892; *City of Danville* v. *Danville R. & E. Co.*, 114 Va., 382, 76 S. E., 913, 43 L. R. A. (N. S.), 463; 26 R. C. L., 1171.

Cases that apparently extend the rule and impose what appears to be an additional obligation to make anew or to improve or to pave the space occupied by the tracks are grounded upon a statute, or upon contract, or upon inferences derived from provisions of the franchise. For instance, in *City of Danville* v. *Danville R. & E. Co.*, *supra,* the franchise required the railway to keep the street in good order and repair at all times, and it was held that this imposed the burden to use the same material as the city used. In *Milwaukee El. Ry. & Light Co.* v. *Milwaukee, supra,* the railway obligated itself to keep in repair with the same material as the city last used to improve the street. The court said the language of the ordinance was not distinguishable from that involved in other Minnesota cases where it was held it was the duty to keep in repair without qualification was broad enough

to require repaving. In *New Bern* v. *Atlantic & N. C. R. Co., supra,* the franchise required the company to grade and keep and preserve the street in good order for use of the citizens of the town, and so the court held that that provision of the contract authorized the inference that the company agreed to pave the street when use required.

The franchise under which the defendant occupies University avenue and Euclid avenue was granted by the quarterly court of Knox county before extension of the city limits, and that franchise imposed no obligation upon the railway company to improve or repair any part of the street. The common-law obligation to so use the right of way as to avoid obstructing travel could not be stretched to include the duty to rebuild any portion of the street or to lay a concrete base covered by an asphalt surface on that portion of the street occupied by the tracks.

The controversy between the city and the defendant originated after the street improvement in Knoxville had been inaugurated through the several resolutions and ordinances, all in form and sequence as that outlined in establishing district 116, and these ordinances had been passed and the street improvement commenced or contracts let before this controversy originated between the city and the defendant over the costs of paving between the tracks on University and Euclid avenues. In this situation it was agreed that the street railway would pave in other districts and the question of liability should be determined by the courts. It was stipulated that in the event of the city's failure to recover under its bill the defendant's answer should be taken as a cross-bill affording affirmative relief.

■ In determining the right of the defendant to recover in the cross-action, it is necessary to consider the franchise ordinances under which the railway occupies the other streets involved. It was stipulated that all the streets improved, except in improvement district 201, were beyond the city limits when the railway tracks were laid. The franchises under which the railway occupied these roads were granted by the county court of Knox county April 5, 1887. The railway was authorized by the county court to lay tracks on the highways of North Fourth avenue, Mitchell street, Grainger street, Coleman street, Katherine street, Brookside avenue, Central avenue, and an unknown street around the hill to Central avenue. No conditions were annexed to the franchise on any of these streets. There is no statement from which it may be inferred that the franchise was accepted under a condition that the street railway would share the cost of any future street improvements. The only obligation attending the railway's acceptance of the franchise on these highways was the common-law obligation to avoid obstructing the highway by properly maintaining the space occupied by the tracks. The common-law obligation to maintain and repair over the tracks could not include the obligation to share the cost of making a new street of cement and asphalt, and under the stipulation and agreement the defendant may recover under its cross-bill except for paving Sixth avenue in improvement district 201.

It was stipulated that Exhibit 2, an ordinance of Knoxville passed January 11, 1876, is not material, and cannot affect the result because the grant therein did not refer to any street within the improvement districts involved. The stipulation narrows the controversy as it

may be affected by conditions annexed to the franchise to Sixth avenue in improvement district 201. Sixth avenue, originally Katherine street before extension of the present city limits, was within the corporate limits of North Knoxville. The map, Exhibit 1 to the record, shows that Sixth avenue (formerly Katherine street) extended from Albers Place near the old Knoxville city limits eastward to a point beyond Gillespie avenue. In covering the distance this avenue passes through the Branner and Caswell addition and crosses Washington street, Greenwood, Pratt, and Gillespie avenues.

The city of North Knoxville, by ordinance, Exhibit 4 to the record, passed December 9, 1889, granted a franchise on streets beginning at the corporation line of Knoxville at North Fifth avenue and along Albers avenue to the corporation line; thence along Sixth avenue to the intersection of Washington street; thence along Washington street to the east line of the corporation of North Knoxville. Again on January 25, 1896, the city of North Knoxville passed an ordinance granting a franchise to the railway along Sixth avenue from the intersection of Washington street to the intersection of Gillespie avenue; thence with Gillespie avenue to Rucker street; thence with Rucker street to the corporation line. The ordinance of January 25, 1896, was amended by an ordinance of February 22, 1898, granting the railway's franchise along and over Sixth avenue with its intersection with Washington street, Katherine street, in Mayfield addition; thence along Katherine street. The map exhibited with the stipulation indicates that the franchise extended across improvement district 201.

A question is intruded by defendant about the railway's assumption of the ordinance of January 25, 1896.

The railway accepted the franchise on Katherine street, or Sixth avenue, and in writing on February 22, 1898, accepted the amendatory ordinance. The ordinance of North Knoxville, passed January 25, 1896, obligated the railway and its successors "to keep in good repair and with like material, or the same material as used by the city, that portion of the street inside of the two rails and one foot on the outside of the rails of its tracks . . . it being understood that when said tracks are in paved streets said company shall keep its part of said street in repair with the same material as that with which said street is paved."

By this provision of the franchise ordinance the defendant was obligated to pave the space occupied by its tracks on Sixth avenue in district 201, and for the cost of such paving it cannot recover under its answer filed as a cross-bill.

The decree of the Court of Appeals must be reversed, and the decree of the chancellor, as modified, affirmed.